438 So.2d 516 (1983)
The TRIBUNE COMPANY, Petitioner,
v.
Norman CANNELLA, Chief Assistant State Attorney, Cynthia Sontag, Director of Administration of the City of Tampa, Robert DePerte, Robert Jones, and Roy Pierce, Respondents.
No. 82-1635.
District Court of Appeal of Florida, Second District.
September 30, 1983.
*517 Preston Moore and Steven L. Brannock of Holland & Knight, Tampa, for petitioner.
Joseph G. Spicola, Jr., City Atty., Luis G. Figueroa and Salvatore Territo, Asst. City Attys., Tampa, for respondent Cynthia Sontag.
Jim Smith, Atty. Gen., and Eric J. Taylor, Asst. Atty. Gen., Tallahassee, for respondent Norman Cannella.
R. Jeffrey Stull of Stull & Heidt, Tampa, for respondents Robert DePerte, Robert Jones, and Roy Pierce.
Sanford L. Bohrer and Franklin G. Burt of Paul & Thomson, Miami, for amicus curiae Lakeland Ledger Pub. Co.
George K. Rahdert of Rahdert, Anderson & Richardson, St. Petersburg, for amicus curiae Times Pub. Co.
PER CURIAM.
The Tribune Company, publisher of the Tampa Times, petitions for writ of certiorari to review the trial court's orders denying its petitions for writ of mandamus. Petitioner sought mandamus to compel respondents Norman Cannella, Chief Assistant State Attorney, and Cynthia Sontag, Director of Administration of the City of Tampa, to release the personnel files of Tampa police officers Robert DePerte, Robert Jones, and Roy Pierce, which petitioner requested pursuant to Chapter 119, Florida Statutes (1981), Public Records (The Public Records Act). After reviewing the legal arguments made and the authorities cited,[1] we[2] have determined to grant the petition.

FACTS
At 9:15 a.m. on July 1, 1982, Carl Crothers, a reporter for the now defunct Tampa Times newspaper, asked respondent Sontag for permission to review the personnel files of Jones, Pierce, and DePerte, who, according to information given to the Tampa Times, had attempted to arrest one John *518 Emanuel Riley the previous night and had been involved in a struggle and an exchange of gunshots which resulted in Riley's death and a bullet wound to Officer Jones.
Sontag denied the request. The City of Tampa had adopted a policy of postponing compliance with the Public Records Act for seven days (now three days) pending notification of employees whose personnel records had been requested pursuant to the Act. The city had also adopted a policy that whenever the Tampa Police Department or state attorney is investigating any shooting by a police officer, all personnel records of such an officer would be withheld from public view, and compliance with the Public Records Act would be postponed indefinitely until the investigation was completed.
On July 1, 1982, petitioner filed a petition for writ of mandamus against Sontag seeking to compel production of the personnel records it had requested. The trial judge, Judge Gallagher, heard the petition at 9:00 a.m. on July 2, 1982. At that hearing, the city attorney stated that after The Tampa Times had made its Public Records Act request, the state attorney had subpoenaed the personnel records and that the Department of Administration had delivered the records immediately and had not retained any copies. He also took the position that, in any event, the files were exempt from disclosure as active criminal investigative or criminal intelligence information. The trial judge agreed and ruled in favor of Sontag.
At approximately 10:00 a.m. on July 2, 1982, petitioner's counsel requested respondent Cannella to provide the personnel records in question. Counsel also requested a copy of the subpoena by means of which Cannella had obtained custody of the records. Cannella refused to provide the records or a copy of the subpoena and refused to discuss what exemption he was relying on under the Public Records Act.
Later that day petitioner filed a petition for writ of mandamus against Cannella, seeking to compel production of the personnel records. The trial judge denied that petition in a hearing held at 2:00 p.m. on July 6, 1982, ruling that the personnel files were exempt from disclosure as criminal investigative information within the meaning of Section 119.07(3)(d), Florida Statutes (1981).
On July 8, 1982, counsel for petitioner telephoned the city attorney to renew petitioner's Public Records Act request. Counsel for the City of Tampa said that the state attorney was concluding his investigation that day; that the records would be returned to the city attorney forthwith; and that, upon receipt, copies of the records would be made available to The Tampa Times.
On the afternoon of July 8, 1982, the state attorney held a press conference announcing the conclusion of his investigation into the Riley shooting. At this conference, David Dahl, a Tampa Times reporter, was told that the personnel records had been returned to the City of Tampa with no copies retained by Cannella's office. Tampa Assistant City Attorney Salvatore Territo informed Dahl that the records would not be produced until Monday, July 12, at the earliest, in order to excise certain information from the records and to allow time for the officers to make objections on the basis of federal rights of privacy. Dahl returned to the city attorney's office at 10:00 a.m. on Monday, July 12, 1982, and was told that the circuit court had held a hearing and entered a temporary restraining order forbidding release of the records.
That day the three officers filed an action for a permanent injunction against any disclosure of their personnel files by the city. A hearing was held the same day at which the city attorney and counsel for the officers were present. Petitioner had no prior notice of the filing of the action or of the hearing. Citing the privacy rights of the officers, the trial judge entered a temporary restraining order forbidding release of the personnel records until Friday, July 16, at 3:15 p.m., for which time a hearing was scheduled (with notice to petitioner) to decide whether the restraining order should be continued.
*519 On July 15, 1982, petitioner filed the instant petition for certiorari with this court. On July 16, 1982, the officers filed a complaint in the United States District Court for the Middle District of Florida requesting that court to permanently enjoin disclosure of their personnel records by the city. The complaint was grounded on the claim that release of their files would violate their right to privacy.
The federal judge, Judge Krentzman, granted a temporary restraining order (TRO) the same day. At the July 16, 1982, hearing in state court, Judge Gallagher reserved ruling pending action by Judge Krentzman.
On July 19, 1982, Judge Krentzman granted petitioner's motion to intervene in the officers' federal action. On July 22, 1982, he dissolved his TRO, ruling that the officers did not have a reasonable likelihood of success on the merits. Upon learning of the dissolution of the TRO, petitioner renewed its Public Records Act request of the city. The city refused to release the records, asserting doubt as to whether the state TRO was still in effect.
At a hearing on July 23, 1982, Judge Gallagher expressly stated that his July 12 TRO was no longer in effect. Petitioner then sought a ruling on its petition for a writ of mandamus to Sontag. Judge Gallagher refused to act due to the pendency of the instant petition for certiorari.
An hour later the city released the records sought by petitioner.

JURISDICTION
In light of the policy of the legislature and the courts of this state to expedite proceedings involving denial of media access to public records and judicial proceedings, certiorari is unquestionably an appropriate vehicle for review of the issues involved here. § 119.11, Fla. Stat. (1981); State ex rel. Miami Herald Publishing Co. v. McIntosh, 340 So.2d 904 (Fla. 1977); News-Press Publishing Co. v. Gadd, 388 So.2d 276 (Fla. 2d DCA 1980). Therefore, the jurisdiction of this court was properly invoked pursuant to Article V, Section 4(b)(3) of the Florida Constitution and Florida Rules of Appellate Procedure 9.030(b)(3) and 9.100.
However, the issues raised are now technically moot, since petitioner has been provided access to the records sought. Nevertheless, we agree with petitioner that the challenged actions here are "capable of repetition, yet evading review," so that the mootness doctrine does not apply. Sosna v. Iowa, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). When, as here, the challenged action is of too short a duration to be fully litigated prior to its cessation or expiration and there is a reasonable expectation that the same complaining party will be subjected to the same action again, review will be allowed. Weinstein v. Bradford, 423 U.S. 147, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975). We therefore conclude that the issues raised by petitioner are ripe for adjudication.

ANALYSIS
The sections of chapter 119 or portions thereof pertinent to the instant case provide:
119.01 General state policy on public records.  It is the policy of this state that all state, county, and municipal records shall at all times be open for a personal inspection by any person.
119.011 Definitions.  For the purpose of this chapter:
(1) "Public records" means all documents, papers, letters, maps, books, tapes, photographs, films, sound recordings or other material, regardless of physical form or characteristics, made or received pursuant to law or ordinance or in connection with the transaction of official business by any agency.
(2) "Agency" means any state, county, district, authority, or municipal officer, department, division, board, bureau, commission, or other separate unit of government created or established by law and any other public or private agency, person, partnership, corporation, or business entity acting on behalf of any public agency.
*520 (3)(a) "Criminal intelligence information" means information with respect to an identifiable person or group of persons collected by a criminal justice agency in an effort to anticipate, prevent, or monitor possible criminal activity.
(b) "Criminal investigative information" means information with respect to an identifiable person or group of persons compiled by a criminal justice agency in the course of conducting a criminal investigation of a specific act or omission, including, but not limited to, information derived from laboratory test reports of investigators or informants, or any type of surveillance.
(c) "Criminal intelligence information" and "criminal investigative information" shall not include:
1. The time, date, location, and nature of a reported crime;
2. The name, sex, age, and address of a person arrested or of the victim of a crime except as provided in s. 119.07(3)(h);
3. The time, date, and location of the incident and of the arrest;
4. The crime charged;
5. Documents given or required by law or agency rule to be given to the person arrested; and
6. Informations and indictments except as provided in s. 905.26.
(d) The word "active" shall have the following meaning:
1. Criminal intelligence information shall be considered "active" as long as it is related to intelligence gathering conducted with a reasonable, good faith belief that it will lead to detection of ongoing or reasonably anticipated criminal activities.
2. Criminal investigative information shall be considered "active" as long as it is related to an ongoing investigation which is continuing with a reasonable, good faith anticipation of securing an arrest or prosecution in the foreseeable future.
In addition, criminal intelligence and criminal investigative information shall be considered "active" while such information is directly related to pending prosecutions or appeals. The word "active" shall not apply to information in cases which are barred from prosecution under the provisions of s. 775.15 or other statute of limitation.
(4) "Criminal justice agency" means any law enforcement agency, court, or prosecutor... .
... .
119.07 Inspection and examination of records; exemptions. 
(1)(a) Every person who has custody of public records shall permit the records to be inspected and examined by any person desiring to do so, at reasonable times, under reasonable conditions, and under supervision by the custodian of the records or his designee. The custodian shall furnish copies or certified copies of the records upon payment of fees as prescribed by law or, if fees are not prescribed by law, upon payment of the actual cost of duplication of the copies... .
(b) In the case of records produced under this act, when the nature or volume of records is such as to require extensive clerical or supervisory assistance by personnel of the agency involved, the agency may charge, in addition to the actual cost of duplication, a reasonable charge, which shall be based on the actual salary rate of such personnel providing the service.
(2)(a) Any person who has custody of public records and who asserts that an exemption provided in subsection (3) or in general or special law applies to a particular record shall delete or excise from the record only that portion of the record for which an exemption is asserted and shall produce for inspection and examination the remainder of such record.
(b) In any action in which an exemption is asserted pursuant to paragraph (e), paragraph (f), or paragraph (g) of subsection (3), the record or records shall be submitted in camera to the court for a de novo inspection. In the case of an exemption asserted pursuant to paragraph (d) of subsection (3), an in camera inspection shall be discretionary with the court. If the court finds no *521 basis for the assertion of the exemption, it shall order the records to be disclosed.
(3)(a) All public records which are presently provided by law to be confidential or which are prohibited from being inspected by the public, whether by general or special law, shall be exempt from the provisions of subsection (1).
... .
(c) Examination questions and answer sheets of examinations administered by a governmental agency for the purpose of licensure, certification, or employment shall be exempt from the provisions of subsection (1). However, an examinee shall have the right to review his own completed examination.
(d) Active criminal intelligence information and active criminal investigative information are exempt from the provisions of subsection (1).
... .
(k) The home addresses, telephone numbers, and photographs of law enforcement personnel; the home addresses, telephone numbers, photographs, and places of employment of the spouses and children of law enforcement personnel, and the names and locations of schools attended by the children of law enforcement personnel are exempt from the provisions of subsection (1).
... .
119.11 Accelerated hearing; immediate compliance. 
(1) Whenever an action is filed to enforce the provisions of this chapter, the court shall set an immediate hearing, giving the case priority over other pending cases.
(2) Whenever a court orders an agency to open its records for inspection in accordance with this chapter, the agency shall comply with such order within 48 hours, unless otherwise provided by the court issuing such order, or unless the appellate court issues a stay order within such 48-hour period. The filing of a notice of appeal shall not operate as an automatic stay.
(3) A stay order shall not be issued unless the court determines that there is substantial probability that opening the records for inspection will result in significant damage.

Whether Personnel Files Are Public Records
It is beyond peradventure that personnel files of city or county employees are public records within the meaning of the Public Records Act and are therefore subject to the public's right of access. Douglas v. Michel, 410 So.2d 936 (Fla. 5th DCA 1982); Roberts v. News-Press Publishing Co., 409 So.2d 1089 (Fla. 2d DCA 1982). Section 119.07(3)(k) implies that the files of police officers are no exception by expressly exempting certain specified information that might be contained in such files.
We are constrained to further point out that Mills v. Doyle, 407 So.2d 348 (Fla. 4th DCA 1981), held that personnel records, even grievance records of teachers,[3] are public records within the purview of the Act. In the analogous case of Miami Herald Publishing Co. v. Marko, 352 So.2d 518 (Fla. 1977), our supreme court rejected the officers' assertion that their constitutional right of disclosural privacy precluded public disclosure of a grand jury presentment describing acts of misconduct by the patrolmen in the performance of their duties and containing critical statements about the officers, although not indicting them. "A public office is a public trust. The people shall have the right to secure and sustain that trust against abuse." Art. II, § 8, Fla. Const. The Public Records Act implements the fundamental policy that the public has the right to full disclosure of the conduct of its police officers in order to determine whether these officers of government are appropriately discharging their assigned duties and responsibilities.

*522 Delay in Disclosure

As petitioner correctly points out, there is no specific provision in the Act for delay in public access to allow public employees whose files are requested the opportunity to assert Florida or federal constitutional privacy right. Moreover, as our supreme court has stated, "[n]ews delayed is news denied. To be useful to the public, news events must be reported when they occur." State ex rel. Miami Herald Publishing Co. v. McIntosh, 340 So.2d 904, 910 (Fla. 1977).
On the other hand, as noted in Roberts, any
statutory privilege or exemption or any constitutional right of nondisclosure will most often be personal to the employee and, therefore, subject to being asserted only by the employee and not by the custodian of the file... . We conclude that a temporary delay in the right of access to personnel records, in order to allow an employee a reasonable time to determine whether to assert any existing right of exemption or confidentiality, seems only logical and reasonable. The Lee County resolution, we find, imposes ... reasonable conditions in allowing employees twenty-four hours' notice... . [I]t is significant that section 119.11 requires that whenever a court orders an agency to open its records for inspection in accordance with the provisions of chapter 119, the agency shall comply with such order within forty-eight hours, unless otherwise provided by the court issuing such order. Thus, it seems that the practical effect of the Lee County resolution may be to lessen the time within which questionable items might be made available for inspection.
409 So.2d at 1094-1095.
While section 119.07(2)(a) places the duty of excising exempt portions of requested records on the custodian of those records, we do not believe that a public employee whose personnel file has been requested should be forced to rely on the records custodian to protect the employee's interests. The custodian will often be too busy performing his or her day-to-day duties and responsibilities and may be able at best to make only a cursory examination of the record to protect the employee's private concerns. We therefore agree with Roberts that it is only reasonable to allow an affected employee a reasonable opportunity, once his or her personnel file has been requested, to review that file for the purpose of determining whether to assert a right to exemption or confidentiality. The public has the right to know and have access to pertinent records. On the other hand, the employee should be accorded a modicum of protection, if for no other reason than one of fairness and equal treatment.
We also conclude, in accord with the reasoning of Roberts, that section 119.11 implies that a forty-eight-hour delay in releasing records is reasonable. We therefore reaffirm this court's approval in Roberts of a twenty-four-hour delay as reasonable. However, in accordance with the limitation on delay set forth in section 119.11, we now hold that an agency shall have no longer than forty-eight hours to comply with a Public Records Act request. Thus the City of Tampa's current delay period of three days is excessive and must be reduced to no more than forty-eight hours.
We also feel constrained to express our concern that the Public Records Act in its current form tends to make second class citizens of state and local government employees in Florida insofar as it opens their entire personnel files to public scrutiny. While the public clearly has a right to information such as salary and job attendance and efficiency reports, much of the information contained in an employee personnel file, such as marital status, number of children, home address, telephone number, and certain health records, appears to us to be of no legitimate interest to anyone but the employer and the individual employee. We believe that all government employees, not just law enforcement officers, see § 119.07(3)(k), have a right to keep their home addresses and telephone numbers and family information away from public scrutiny. We therefore take this opportunity to urge the Florida legislature to statutorily limit the *523 portions of public employee personnel files available under the Public Records Act to job-related information and to establish specific guidelines spelling out in clear and unmistakable language precisely what does and what does not constitute a public record in an employee's personnel file.

Transfer of Requested Records to Another Agency
Petitioner rightly complains that the city here improperly played a "shell game" by transferring the requested records to the state attorney's office, thereby rendering it temporarily unable to comply with petitioner's request. Tober v. Sanchez, 417 So.2d 1053 (Fla. 3d DCA 1982). However, there is no simple solution to this problem. The city clearly had a duty to comply with the subpoena and, furthermore, had no duty, indeed, may have had no authority, to delay that compliance. Moreover, not only does nothing in the Public Records Act require that extra copies of files be made, but the Act affirmatively indicates that the costs of copies desired by a requesting party are to be borne by that party. § 119.07(1)(a). However, if no remedy is available, a party's access to requested information could be delayed indefinitely by repeated transfers between different state agencies.
We therefore set forth one possible solution. We hold that if a requesting party foresees or encounters such a problem in the future, it has the right to pay in advance for copies of any or all of the requested information, and, if it does so, the custodial agency shall have the duty to make the requested copies and make them available to the requesting party to the extent and within the time limits required by law. See 1980 Op.Att'y Gen.Fla. 080-96 (December 5, 1980).

Exemption of the Officers' Files as Criminal Intelligence or Criminal Investigative Information
Information filed before an investigative process begins cannot be criminal investigative information. 1980 Op.Att'y Gen. Fla. 080-96 (December 5, 1980). Neither can such information be criminal intelligence information, which is information collected in an effort to anticipate criminal activity. Id.
The criminal investigative exemption, section 119.07(3)(d), is a codification of the common law Police Secrets Rule developed by the Florida courts to exempt police investigatory and intelligence information from public disclosure. Id. The exemption has always had a limited purpose  to prevent premature disclosure of information when such disclosure could impede an ongoing investigation or allow a suspect to avoid apprehension or escape detection. Id.; see Glow v. State, 319 So.2d 47 (Fla. 2d DCA 1975). Materials in the officers' personnel files prior to the incident investigated have no relation to that purpose.
Cannella based his exemption claim on the rationale that by subpoenaing the personnel records, he "complied" them within the meaning of section 119.011(3)(c). It is obvious, however, that the personnel records were "compiled" within the meaning of the statute when the custodial agency, the city, originally accumulated the materials in them. A law enforcement agency cannot withdraw materials from public scrutiny by deeming another "compilation" to occur simply because it subpoenas such records. See FBI v. Abramson, 456 U.S. 615, 102 S.Ct. 2054, 72 L.Ed.2d 376 (1982); Gregory v. FDIC, 470 F. Supp. 1329 (D.D.C. 1979), aff'd in part, rev'd in part on other grounds, 631 F.2d 896 (D.C. Cir.1980).

Conclusion
We grant the requested writ of certiorari, and based on the foregoing analysis, we hold that (1) the officers here had no right to privacy in their personnel records; (2) a custodial agency may delay disclosure of nonexempt public records for no more than forty-eight hours after a request therefor; (3) an agency may not transfer requested records merely to avoid disclosure, and if a transfer is necessary, it must make copies of requested records at the expense of the requesting party if asked to do so before *524 the transfer is effected; and (4) law enforcement officers' personnel records compiled and maintained by the employing agency can never constitute criminal investigative or criminal intelligence information within the meaning of the Public Records Act even if subpoenaed by another law enforcement agency at some point after their original compilation by the employing agency.
We also certify to the Florida Supreme Court the following questions of great public importance:
1. MAY DISCLOSURE OF NONEXEMPT PUBLIC RECORDS AUTOMATICALLY BE DELAYED FOR A SPECIFIC PERIOD OF TIME FOR ANY REASON?
2. IF THE ANSWER TO THE FIRST QUESTION IS YES, WHAT IS THE MAXIMUM PERMISSIBLE DELAY PERIOD, AND FOR WHAT PURPOSE OR PURPOSES MAY THE DELAY PERIOD BE INVOKED?
OTT, C.J., and HOBSON, BOARDMAN, CAMPBELL and SCHOONOVER, JJ., concur.
LEHAN and DANAHY, JJ., concur in part and dissent in part.
SCHEB, J., concurs with DANAHY, J.
RYDER, J., dissents, with opinion.
LEHAN, Judge, concurring in part, dissenting in part.
I concur with the majority opinion except as to the authorization of a 48-hour delay. My opinion is addressed solely to that delay.
The issues may be outlined as follows. I believe that the delay in the production of personnel files of governmental employees authorized in Roberts was based upon the following two alternative grounds: (# 1) the conclusion under principles of statutory construction that certain provisions of the Public Records Act, including the provision for a 48-hour delay in the court-ordered production of records and the various exemption provisions of the Act, impliedly authorize a delay in the production of records, such as a delay to allow the excising of exempt information, and (# 2) the conclusion that a constitutional right of disclosural privacy or confidentiality requires a delay period during which an employee may attempt to prevent the disclosure of private information in his file.
Alternative ground # 1 from Roberts is apparently the principal basis for the majority opinion in this case authorizing a 48-hour delay. Although the majority opinion contains references to alternative ground # 2 (e.g., within its quotations from Roberts[1]), the opinion is not based on alternative ground # 2 because the holding of the opinion finds no constitutional right to privacy. Judge Danahy's dissenting opinion would entirely overrule Roberts apparently on the basis of disagreement with both of the two alternative grounds. Under Judge Danahy's opinion, ground # 1 would be invalid apparently on the basis that no such delay should be found to have implied by provisions of the Act and ground # 2 would be invalid apparently on the basis that, consistent with Judge Scheb's dissent in Roberts, the Florida Supreme Court in Shevin v. Byron, Harless, Schafer, Reid & Associates, Inc., 379 So.2d 633 (Fla. 1980), said that there is no constitutional right of disclosural privacy in Florida.
My position, in summary, is (a) to agree with Judge Danahy's opinion that alternative ground # 1 in Roberts is invalid under statutory construction principles; (b) to find another statutory construction ground for such invalidity, to wit, the preemption doctrine, as further explained below; (c) to *525 agree that alternative ground # 2 of Roberts is invalid under Shevin, which we as a District Court of Appeal are bound to follow, and, therefore, that Roberts should be expressly overruled; and, (d) to believe there is a constitutional right of disclosural privacy under federal case law decided subsequent to Shevin and there is basis for the Florida Supreme Court to reconsider Shevin so that a government employee's right to privacy may be considered as a ground for a short delay in the production of the employee's personnel file.
This opinion is divided into two parts:
A. Why existing Florida preemption law does not justify a municipally-authorized delay in the production of personnel files of municipal employees under the Public Records Act, and
B. Why I believe we are obliged to interpret the Florida Supreme Court's opinion in Shevin as saying that there is no enforceable constitutional right to privacy of a governmental employee in Florida and to follow the Shevin opinion by holding in this case that there can be no valid delay period for the production of governmental personnel files for the purpose of permitting the exercise of a right to privacy. Nonetheless, there is reason to believe that current federal constitutional law does provide a basis for recognizing governmental employee's constitutional rights to privacy and that the subject is deserving of reconsideration by the Florida Supreme Court. Alternatively, the subject bears reconsideration by the legislature.

A. A Delay by Municipalities in the Production of Public Records is Not Justified Under "Home Rule"; The Legislature Has Preempted the Subject.

Consistent with Judge Scheb's opinion in Roberts and with Judge Danahy's dissenting opinion in this case, I believe there can be no specific, municipally-authorized delay period for the production of public records. The principal reason is that the subject has been preempted by the legislature in the Public Records Act.
Judge Scheb's dissent in Roberts relied upon the preemption doctrine. Under that doctrine a subject is preempted by a senior legislative body from the action by a junior legislative body if the senior legislative body's scheme of regulation of the subject is pervasive and if further regulation of the subject by the junior legislative body would present a danger of conflict with that pervasive regulatory scheme. See 16 Am.Jur.2d, Constitutional Law, § 291. Florida law, under section 166.021, Florida Statutes (1981), which cites article VIII, section 2(b) of the Florida Constitution, includes a more restrictive application of the preemption doctrine, precluding preemption and leaving "home rule" to municipalities unless the legislature has expressly said otherwise. See State v. Redner, 425 So.2d 174 (Fla. 2d DCA 1983), and Edwards v. State, 422 So.2d 84 (Fla. 2d DCA 1982). In Edwards this court held that in order for state legislation to be preemptive there must be an "express" reference to the subject in the state law "which is distinctly stated and not left to inference." Id. at 85.
Whether general principles or the provisions of section 166.021 are followed, preemption appears to apply. I believe that the legislature has made "express reference" to the subject at hand and has "distinctly stated" the applicable law. There are two provisions of the Public Records Act especially relevant to this matter. One is section 119.01, which provides for records to be open for inspection "at all times." The other is section 119.07(1)(a), providing for records to be inspected "at reasonable times." Those provisions expressly refer to the subject of the times for production of public records and, I believe, require the result advocated in Judge Danahy's opinion.
In addition, the subject of a delay in those times has also been expressly referred to by the legislature in section 119.11(2), which provides for a 48-hour delay in the court-ordered production of records, allowing a party sufficient time to seek an appellate stay of the order without, in the meantime, having to release the documents. Section 119.11(2) provides for no delay for records production without a court order, *526 and it is the only provision of the Act addressed to a specific time period within which records may be produced. By requiring production within 48 hours "unless a court orders otherwise" the section also provides a safety valve in the event that production within 48 hours is impractical. On the other hand, the 48-hour municipally-authorized delay period[2] approved in the majority opinion provides no safety valve and would appear to be a rigid maximum time which, in contrast to the legislative plan evidenced by section 119.11(2), may well not be practical in application upon, for example, a request for voluminous documents requiring extraordinary effort to locate and produce.

B. Constitutional Rights of Privacy in Public Records Are Not Protected in Florida But Are Worthy of Consideration for Protection.

As to the separate issue of whether a municipality, by enacting a delay period for the production of public records, may provide governmental employees with the opportunity to exercise potential constitutional rights of privacy, I agree with Judge Danahy that a municipality may not do so.
I reach with reluctance the conclusion that there can be no delay at all, however short, to provide an employee with the opportunity to claim constitutional rights of privacy. But I believe that the Florida Supreme Court, in its policymaking role, has foreclosed the issue by its opinion in Shevin that there is no enforceable right to privacy of information in public records. There is an argument relative to Shevin that
[a]n apparent ambiguity is present in the Court's discussion of the existence of a constitutional right of disclosural privacy. It is unclear whether the court believed that there was a constitutional right of disclosural privacy but refused to define it until the [U.S.] Supreme Court had, or that, under the facts, there was no legitimate privacy right present.
Note, Constitutional Law: Individual's Right to Disclosural Privacy as Limited by the Public Records Act, 10 Stet.L.Rev. 376, 386-87 (1981). But I cannot find that the following language of Shevin permits us as a district court of appeal to approve a local legislative body's efforts to protect the federal constitutional rights of a citizen employed by government who asserts that his rights to privacy may be violated by the press or by anyone seeking access to his personnel file:
Until the [U.S.] Supreme Court gives some substance and life to this interest [a person's right of disclosural privacy], we will be guided by that court's decision in Paul v. Davis [424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405]... . The Supreme Court may some day breath life into the privacy interest asserted by respondents, but, until that occurs, we conclude that there does not exist, under the facts of this case, a constitutionally protected interest sufficient to prevent the public from seeing the consultants' papers.
379 So.2d at 638.
There are arguments to distinguish Shevin on the grounds that it is limited to the facts of that case, that it recognizes a potential federal constitutional right of privacy as established by the United States Supreme Court, and that the Florida Supreme Court did not mean in Shevin that Florida courts must do nothing to protect federal constitutional rights and must leave to the federal courts protection of citizens' federal constitutional rights infringed upon by Florida legislative acts. However, I cannot ignore the foregoing Shevin wording and the nature of the Shevin facts (which may well appear to have provided sufficient opportunity *527 to uphold a privacy right) and cannot find that the impact of Shevin was limited to its facts, especially in light of Justice Overton's and Justice England's concurring opinions. Those concurring opinions construe the majority opinion in Shevin as constituting a "categorical rejection" of "a constitutional right of disclosural privacy" (and disagree with that rejection). 379 So.2d at 641. See also Ivory v. Wainwright, 393 So.2d 542, 544 (Fla. 1981). If that is not what the Florida Supreme Court meant, the court may, of course, clarify the situation when the matter next arises before it. But I feel that we may not do so.
Judge Danahy's dissenting opinion recognizes that after Shevin was decided the Florida constitution was amended to specifically provide for a right of privacy. Thus, one of the specific grounds of Shevin, that the Florida constitution recognized no right of privacy, no longer exists. Judge Danahy's opinion points out that that constitutional amendment is subject to the proviso that it "shall not be construed to limit the public's right of access to public records and meetings as provided by law." His opinion concludes, "thus the Florida Constitution provides no basis for a right of disclosural privacy." There is also language in Roberts along the same lines. However, whether that proviso also means that there may be no limit to any law, such as the Public Records Act, which gives access to public records or whether, on the other hand, there shall only be no limit to the public's right of access pursuant to valid laws, appears open to question. Section 119.07(1)(a) gives the right of access to public records to "any person" without any requirement that such person's access be for the public or in the public interest; therefore, it can be at least argued that section 119.07(1)(a) in that respect may be inconsistent with that constitutional amendment. Whether "the public's right of access" under the Florida Constitution is equivalent to "any person's" right of access under the Public Records Act, or whether "any person's" right of access must now, pursuant to the constitutional amendment, be in the public interest and therefore subject to the type of balancing test of the public interest weighed against constitutional rights of privacy, as in Fadjo v. Coon, 633 F.2d 1172 (5th Cir.1981), remains to be seen.[3] If potential federal constitutional rights to privacy may be enforceable in Florida courts under the facts of this case and if under these facts privacy rights are also enforceable under the state constitution, there would then be no disparity between the two constitutions.
Considering the developments in the law relative to a constitutional right to privacy that have occurred since the Shevin decision, there appears to be sound basis for concluding that the matter is deserving of reconsideration.
District courts of appeal "should not refrain from providing the supreme court with opportunities to make needed changes in the law or from suggesting innovations in the law." Overton, District Courts of Appeal: Courts of Final Jurisdiction With Two New Responsibilities  An Expanded Power to Certify Questions and Authority to Sit En Banc, 33 U.Fla.L.Rev. 80, 84 (1983). I respectfully express the following views, which seem appropriate to include in an advisory opinion such as this, recognizing our obligation to follow the law as established by the Florida Supreme Court and recognizing our responsibility to be not silent when matters deserving of reconsideration appear to be present. Also, judicial suggestions, and in some cases directions, to the legislative branch of government are inherent and important constitutional facets of our system of checks and balances under our democratic form of government.
The press fills an essential role in our democratic form of government. But it is also important to recognize circumstances when the values at stake are multiple, especially *528 when those values inherently conflict. It would be unrealistic to approach the matter before us from the point of view that only one set of values is involved, e.g., that the rights of the press should necessarily envelop and eliminate other constitutional rights. I do not believe the intent of petitioner or amicus curiae is to take that position. At stake also is a citizen's right to privacy, and no one can contend validly that a person is any less a citizen because he is a governmental employee. The right to privacy is "implicit in the concept of liberty and derives from the Bill of Rights." 33 U.Fla.L.Rev. at 318, citing Griswold v. Connecticut, 381 U.S. 479, 500, 85 S.Ct. 1678, 1690, 14 L.Ed.2d 510 (1965), and Roe v. Wade, 410 U.S. 113, 153, 93 S.Ct. 705, 726, 35 L.Ed.2d 147 (1969).
Since the Shevin decision in January 1980, others have expressed their differences with concepts perceived to be contained in Shevin that "the federal right of privacy was as yet too amorphous and indefinite to allow this state's courts to apply that doctrine as a basis for a decision." Douglas v. Michel, 410 So.2d 936, 939 (Fla. 5th DCA 1982).[4] There is food for thought in Judge Cowart's reluctant concurrence in Michel that Michel, which follows Shevin, "may be a great day for the public disclosure statute, but is a sad day for fairness and decency under law. The legislature created this injustice and should remedy it promptly." 410 So.2d at 940.
One year after Shevin, the United States Court of Appeal for the Fifth Circuit in Fadjo recognized a federal constitutional right of privacy. Judge Krentzman, Chief Judge of the United States District Court for the Middle District of Florida, in proceedings incident to the instant case (the granting of a temporary restraining order, subsequently dissolved by reason of lack of likelihood of success by the police officers in upholding their right to privacy) appeared to have no doubt of the existence of a federal right to privacy. In his Memorandum and Order dated July 22, 1982, Judge Krentzman said, "[T]here is and should be a federal right to privacy."
Given the appropriate opportunity, the Fifth Circuit will probably declare the Florida public records law an unconstitutional invasion of privacy. This prognostication is based upon the current federal recognition of disclosural privacy and the recent Fifth Circuit opinion in Fadjo v. Coon, which conflicts with the Florida public records law as interpreted by the Florida courts. In Fadjo, the court questioned the continued viability of the Florida public records law stating, "the legislature cannot authorize by statute an unconstitutional invasion of privacy."
Federal Constitutional Privacy and the Florida Public Records Law: Resolving the Conflict, 33 U.Fla.L.Rev. 313 (1981). That statement was jointly written by the Associate Director and the Research Coordinator of the Center for Governmental Responsibility, University of Florida College of Law. Its foregoing conclusion is at least arguably supportable under federal law. The reason is not that the public, or the press acting in the public interest, is not entitled to public records, including personnel files of public employees. The principal reason for the view that the Florida Public Records Act is unconstitutional is the position that the Act, containing no provision by which a citizen-governmental employee may seek to protect his or her rights to privacy, fails to recognize and ignores those rights and, therefore, has the effect of erasing those rights. In the context of the case before us, the Act may appear to have the effect of leaving any protection of those rights to the conscience of anyone seeking personnel records, without judicial intervention. Again, "any person" under the Act appears to be entitled to such access, whether a seasoned, responsible newspaper reporter or simply a nosy neighbor or a coemployee of the governmental employee.
It may well be that federal constitutional rights to privacy are in particular, or even *529 most, cases obviously subordinate to the public's right to know. Perhaps in this case that was involved in the basis for Judge Krentzman's dissolution of the above-referenced temporary restraining order by reason of lack of likelihood of success on the part of the policemen. Nonetheless, that should not mean, nor do I believe that petitioner or amicus curiae would mean, that there are any constitutional rights which should be entirely ignored.
The fact that the legislature amends the Act "almost annually", 33 U.Fla.L.Rev. at 315, may be evidence that the full sweep and effect of the Act was not initially recognized. I join with the majority opinion in the request that the legislature reconsider the Act. Of particular significance is the proposition that
privacy and open records can be compatible but accommodation requires acknowledging the value of each. The right to know demands public exposure of recorded official action, but that right should apply with less force to personal information supplied by private citizens. "If citizenship in a functioning democracy requires general access to government files, limited but genuine interests also demand restricted areas of nonaccess."
33 U.Fla.L.Rev. at 335.
The importance of a public records act is beyond legitimate debate. However, constitutionality and fairness appear to be objectives which are obtainable in a viable, effective public records act, as indicated in similar acts passed in other states. See 33 U.Fla.L.Rev. at 339-44.
Examples of accepted methods of accommodating both legitimate public disclosure objectives and individual interests of governmental employees, with an attempt at minimum sacrifice to both, are contained in the California Public Records Act and the federal Freedom of Information Act, which include exemptions "for records where the public's interest in non-disclosure clearly outweighs the public's interest in disclosure," 33 U.Fla.L.Rev. at 338, and in the Freedom of Information Clearinghouse Draft of Model Legislation, 33 U.Fla.L.Rev. at 338, as well as in the Uniform Information Practices Code, which appears to undertake to provide for access to public information without unnecessary sacrifice of personal privacy, 33 U.Fla.L.Rev. at 340. That the Florida Public Records Act is "very liberal" and sharply contrasts with other states' public records acts which do give some recognition to individual rights, 33 U.Fla.L.Rev. at 330, is a position which merits attention in viewing the Florida Act. It would seem that some recognition of individual rights need not be at the substantial sacrifice of disclosural promptness.

C. Summary

Florida preemption law does not entitle a municipality to provide for a delay in the production of personnel records of municipal employees.
There is sound basis to recognize the right of the public, through the press, to prompt public information while not acquiescing in the elimination of potential individual constitutional rights.
I join in the certification to the Florida Supreme Court of the questions stated in the majority opinion. I would additionally certify the questions of whether a governmental employee has a constitutional right of privacy and, if so, whether he may have the opportunity to protect it.
DANAHY, Judge, concurring in part and dissenting in part.
I concur in the decision of the majority in all respects save one. I do not agree that it is permissible for a public agency to adopt a policy of automatically delaying disclosure of an employee's personnel file for any period of time, not even the forty-eight hour period which the majority approves as reasonable. Therefore, to that extent I dissent.
The City relied on this court's opinion in Roberts v. News-Press Publishing Co., 409 So.2d 1089 (Fla. 2d DCA 1982), to support its argument that a governmentally fixed and automatic delay is necessary in order that employees whose files are requested *530 may have an opportunity to become involved in the disclosure process and thus be able to protect against disclosure of exempt or privileged information in their files. In Roberts, this court specifically approved a Lee County resolution providing that personnel files would be opened for inspection no later than twenty-four hours after a request for inspection is made. The majority in the case before us now approves a forty-eight hour delay as reasonable.
In Roberts, we were concerned that there is a potential federal constitutional right of disclosural privacy for employees that may exist in addition to the limited statutory exemptions in regard to the contents of personnel files. We said:
[I]f a right of exemption exists regarding a portion of the contents of an employee's personnel file, how is it ever to be determined which of the contents may be exempt unless the employee is brought into the disclosure process so as to exercise those rights or exemptions and thereby be a party to any enforcement proceeding under the Public Records Law?
A majority of the three-member panel which originally heard oral arguments in this proceeding agreed with the reasoning of Judge Scheb in his dissent from Roberts and felt that the court should revisit the holding in that case. For this reason, the court entertained further oral arguments en banc. A majority of the court continues to share the concerns expressed in Roberts, and now reaffirms the holding in that case. I dissent because I feel that the result in Roberts runs contrary to the provisions of the Public Records Act and the decision of our supreme court in Shevin v. Byron, Harless, Schaffer, Reid & Associates, Inc., 379 So.2d 633 (Fla. 1980).
There are three possible sources from which a public employee's privilege of non-disclosure may spring  a right of disclosural privacy under the Florida Constitution, a right of disclosural privacy under the Federal Constitution, and a right to statutory exemptions which have been enacted by the Florida legislature. In the Shevin case, our supreme court made it clear that there is no general right of disclosural privacy under the Florida Constitution. Subsequent to the court's decision in that case, the people of Florida adopted an amendment to their state constitution providing for a right of privacy. However, the amendment specifically states that "this section shall not be construed to limit the public's right of access to public records and meetings as provided by law." Thus the Florida Constitution provides no basis for a right of disclosural privacy.
In Shevin, the supreme court considered at length the references to a federal right of disclosural privacy in Whalen v. Roe, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977), and Nixon v. Administrator of General Services, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977). The court concluded that these decisions did not support the proposition that there is a general federal right of disclosural privacy sufficiently defined to permit resolution of the question in a specific case. I would follow the decision of our sister court in Douglas v. Michel, 410 So.2d 936 (Fla. 5th DCA 1982), in which that court pointed out that intermediate appellate courts in Florida are required to follow rulings of the Florida Supreme Court even though the intermediate court might have reached a different result as an original matter. Hoffman v. Jones, 280 So.2d 431 (Fla. 1973). The Michel court felt that the decision in Shevin still controls both the federal and state right of privacy issues in cases involving the public disclosure of public employees' personnel records. I agree.
As far as statutory exemptions pertaining to specific materials are concerned, compliance with the Public Records Act requires the custodian of a personnel file to review that file prior to disclosure and remove any material subject to a statutory exemption. The Act specifically places that duty on the custodian. § 119.07(2)(a). Since the statutory exemptions may be applied in this manner, and in the absence of any federal or Florida constitutional right of disclosural privacy, there is no justification for delay in compliance with the Act such as the three-day period of delay adopted *531 as policy by the City of Tampa or the forty-eight hour delay approved by the majority. I would recede from our decision in Roberts and hold that a public agency may not automatically delay compliance with the Act.
I recognize, of course, that there may be circumstances which cause a necessary delay in disclosure of public records. Section 119.07(1)(a) contemplates the possibility of such a delay by providing that inspections shall be at reasonable times and under reasonable conditions. Time may be necessary to retrieve files and records kept in other offices. Time will be required to review the material contained in a file to determine whether there is any information subject to a statutory exemption. A request for inspection received at 4:45 p.m. on Friday may necessarily have to be deferred until the following Monday morning. Thus, as a practical matter, a party wishing to inspect a public record may not be able to obtain instant disclosure. I would hold, however, that the recipient of such a request must act immediately to comply. In my view, there may be a necessary delay in disclosure for practical reasons, but there may be no delay in compliance.
The Florida legislature has determined as a matter of public policy that public employees' personnel files are subject to disclosure under the Public Records Act. In making that determination, the legislature necessarily balanced the public interest in unrestricted access to public employee records against the interest of public employees in protecting personal information which may be contained in those files. The wisdom of that determination is not a matter for assessment by this court. The legislature included no specific provision in the Public Records Act for a delay in public access to allow public employees whose files are requested the opportunity to assert a right of privacy in the contents of those files. I find nothing in the Act or the decisions of our supreme court which would support the judicial imposition of such a provision by implication. As the court in Douglas v. Michel pointed out, if the people of this state no longer believe that unrestricted public access to public employee records is wise, they must address this problem to the legislature, not the courts.
RYDER, Judge, dissenting.
Whereas Judge Danahy in his well written dissent concurs in the decision of the majority in all respects save one, I do not concur with the decision of the majority at all. I do, however, concur in the remaining portion of Judge Danahy's dissent.
NOTES
[1] In addition to the arguments of the parties, we have had the benefit of extensive and well-written amici curiae briefs from the Lakeland Ledger and the publisher of The St. Petersburg Times and Evening Independent (St. Petersburg).
[2] GRIMES, J., did not participate in the decision of the court.
[3] We note that the 1983 Florida legislature enacted laws which affect the disclosure under the Public Records Act of teachers' personnel files and the personnel files of law enforcement and correctional officers. Ch. 83-135 and Ch. 83-136, Laws of Fla. These new laws, however, do not apply to the instant case.
[1] "[A] temporary delay in the right of access to personnel records ... in order to allow an employee a reasonable time to determine whether to assert an existing right of ... confidentiality" and "any constitutional right of nondisclosure ... subject to being asserted ... by the employee... ." That opinion also agrees with Roberts in giving a governmental employee the opportunity, following a third party request for access to the employee's personnel file, to review the file "for the purpose of determining whether to assert a right to ... confidentiality."
[2] The delay period here was characterized as a "policy" of the City of Tampa. Lacking an evidentiary record we do not know if such policy was legislatively adopted. However, the case before us is moot, and our opinion is, therefore, in the nature of an advisory opinion for future guidance. Also, the effect of our accepting jurisdiction in this case is as much to review Roberts, where the policy was pursuant to municipal legislation, as it is to review the present case. Therefore, this opinion assumes that the delay period in the present case was pursuant to municipal legislation.
[3] "It remains to be seen whether, and to what extent the [Shevin v.] Byron, Harless holding will be modified by the recently enacted Florida state constitutional right of privacy." 10 Stet. L.Rev. at 394. But see Douglas v. Michel, 410 So.2d 936 (Fla. 5th DCA 1982), and Mills v. Doyle, 407 So.2d 348, 351 (Fla. 4th DCA 1981).
[4] Garner v. Florida Commission on Ethics, 415 So.2d 67, 69 (Fla. 1st DCA 1982), in contrast to Douglas v. Michel, appears to interpret Shevin as having balanced the public's right to know against an individual's right of disclosural privacy.