The Honorable Janet Reno State Attorney Metropolitan Dade County Justice Building 1351 N.W. 12th Street Miami, Florida 33125 Attention: Mr. George T. Yoss Chief Assistant State Attorney
Dear Ms. Reno:
This is in response to your request for an opinion on substantially the following question:
 IS A MUNICIPALITY OR OTHER POLITICAL SUBDIVISION PREEMPTED FROM ENACTING AN ORDINANCE OR ADMINISTRATIVE REGULATION ESTABLISHING A SET FEE FOR DUPLICATION OF PUBLIC RECORDS IF SAID SET FEE IS REFLECTIVE OF THE "ACTUAL COST OF DUPLICATION" AS DEFINED IN s 119.07(1)(a), F.S. (1984 Supp.)?
Preliminarily, I note that your inquiry makes reference to several municipalities within the jurisdiction of your office which "have, by ordinance or administrative regulation, established a set fee for the cost of duplication of public records." Any such duly adopted ordinances or regulations are, of course, entitled to a presumption of validity unless and until determined otherwise by a court of competent jurisdiction, and I cannot comment thereon at your request. Thus, the comments expressed herein are restricted to the authority of a municipality or other political subdivision to take action in the future with respect to adopting ordinances or regulations which establish a set fee for the duplication of public records.
Chapter 119, F.S., the Florida Public Records Law, was amended by Ch. 84-298, Laws of Florida, such that s 119.07(1)(a), F.S. (1984 Supp.), now reads as follows:
 Every person who has custody of a public record shall permit the record to be inspected and examined by any person desiring to do so, at any reasonable time, under reasonable conditions, and under supervision by the custodian of the public record or his designee. The custodian shall furnish a copy or a certified copy of the record upon payment of the fee prescribed by law or, if a fee is not prescribed by law, upon payment of the actual cost of duplication of the record. The phrase "actual cost of duplication" means the cost of the material and supplies used to duplicate the record, but it does not include the labor cost or overhead cost associated with such duplication. Unless otherwise provided by law, the fees to be charged for duplication of public records shall be collected, deposited, and accounted for in the manner prescribed for other operating funds of the agency. (e.s.)
Cf., AGO 84-51 (ordinance of noncharter county not a "law") and AGO 84-39 (municipal ordinance not a "law"), and authorities cited therein. And see, s 119.01(1), F.S., providing that "[i]t is the policy of this state that all state, county, and municipal records shall at all times be open for a personal inspection by any person." See also, s 119.011(2), F.S., defining agencies subject to the public records law broadly so as to encompass municipal officers and any "separate unit of government created or established by law. . . ."
In AGO 75-50, this office stated that Ch. 119, F.S., when read in conjunction with Ch. 267, F.S., relating to records management, constitutes a state preemption of the field of public records and, therefore, such field is not a proper or valid subject of attempted local regulation or legislation. State control regarding access, maintenance, management, retention, preservation, and disposal of public records is exclusive and operates solely on the custodian of public records. The requirements of Ch. 119 have been made mandatory by the Legislature at the local as well as the state level and hence do not vest in any local agency any discretion whatsoever to change, alter or condition the provisions of Ch. 119. Moreover, I have concluded that this preemption obtains where attempted local regulation of charges to be made for the duplication of public records changes, alters or conditions the provisions of Ch. 119. See, Inf. Op. to Mr. Roger R. Newton, January 5, 1982; Inf. Op. to Mr. Thomas Brown, January 14, 1982.
This office's opinion with respect to Ch. 119, F.S., as a state preemption of the field concerning access to and disposition of public records was supported recently by a unanimous decision of the Florida Supreme Court. See, Tribune Co. v. Cannella, Case Nos. 64,450 and 64,453, September 6, 1984, rehearing denied, December 20, 1984 (Fla. 1984). In the Cannella case, an en banc panel of the Second District Court of Appeal held that a custodial agency may delay disclosure of nonexempt public records for no more than forty-eight hours after a request therefor and certified certain questions to the Supreme Court. Tribune Co. v. Cannella,438 So.2d 516, 523-524 (2 D.C.A. Fla., 1983). The District Court also noted that the agency, the City of Tampa, had adopted a policy of delay with respect to disclosure of personnel records. Id., at 518. The court reaffirmed a previous holding that a twenty-four hour delay with respect to disclosure of personnel records was permissible where such policy was adopted as a resolution by the Lee County Board of County Commissioners. See, Roberts v. News-Press Publishing Co., Inc., 409 So.2d 1089 (2 D.C.A. Fla., 1982). However, the Supreme Court quashed the decision of the district court in the Cannella case and held that "[t]he legislature has clearly preempted local regulation vis-a-vis delay in the release of public records." The Court quoted with approval from Judge Lehan's dissent to the district court's opinion as follows:
 Under [the preemption] doctrine a subject is preempted by a senior legislative body from the action by a junior legislative body if the senior legislative body's scheme of regulation of the subject is pervasive and if further regulation of the subject by the junior legislative body would present a danger of conflict with that pervasive regulatory scheme.
Although the Court's holding was limited to preemption with respect to a policy of delay in the release of public records, I am of the opinion that the court's rationale in Cannella would apply as well to attempted local legislation or regulation as to charges to be made for duplicating public records, to the extent that such legislation or regulation changes, alters or conditions the provisions of Ch. 119.
It would not appear that local legislation or regulation establishing a set fee for duplication of public records changes, alters or conditions the provisions of Ch. 119, F.S., as long as such set fee is in actuality reflective of the "actual cost of duplication" as defined in s 119.07(1)(a), F.S. (1984 Supp.). Thus, despite the general rule of preemption which obtains with respect to attempted local legislation or regulation in the field of public records, I am constrained to conclude that a municipality or other political subdivision is not preempted from enacting an ordinance or administrative regulation establishing a set fee for duplication of public records if said set fee is reflective of the "actual cost of duplication" as defined in s119.07(1)(a). However, such units of local government should exercise caution with respect to such ordinances or regulations, inasmuch as any such set fee may accurately reflect the "actual cost of duplication" as measured by "the cost of the material and supplies used to duplicate the record" as of the time of its adoption, but could "present a danger of conflict with [the] pervasive regulatory scheme" of Ch. 119, F.S., to the extent that the cost of materials and supplies used to duplicate public records may change with the passage of time. It therefore appears advisable for any municipality or other political subdivision adopting ordinances or administrative regulations establishing a set fee for the duplication of public records to review such fee on a periodic basis to ensure that such fee remains "reflective" of the actual cost of duplication so as to avoid any danger of conflict with the statutory definition of "actual cost of duplication." Cf., City of Miami Beach v. Rocio Corp.,404 So.2d 1066 (3 D.C.A. Fla., 1981), pet. for rev. den., 408 So.2d 1092
(Fla. 1981) (municipal ordinance inferior to state law and must fail when conflict arises; such principle remains undisturbed by home rule under Ch. 166, F.S.); Rinzler v. Carson, 262 So.2d 661
(Fla. 1972) (municipality may not authorize what the Legislature has expressly forbidden). Moreover, to the extent that s166.041(1)(a), F.S., defines "ordinance" as official legislative action "of a general and permanent nature" (e.s.), the safer course may be for municipalities or other political subdivisions to adopt resolutions setting such fees for duplication of public records as are reflective of the statutory definiton of "actual cost of duplication" so as to simplify the process of amending such fees as necessary to avoid a danger of conflict. See, s166.041(1)(b), F.S., defining "resolution" as "an expression of a governing body concerning matters of administration, an expression of a particular item of the administrative business of the governing body."
Of course, nothing in Ch. 119, F.S., as amended by Ch. 84-298, Laws of Florida, requires municipalities or other political subdivisions to enact local legislation or administrative regulations to effectuate the provisions of s 119.07(1)(a), F.S. (1984 Supp.). In the absence of local legislation or regulation establishing a set fee for the duplication of public records which is reflective of the statutory definition of "actual cost of duplication," the custodian remains responsible for the determination of the actual cost of duplication, as well as for the collection of charges to be made for the duplication of public records pursuant to s 119.07(1)(a). See, AGO 75-50.
Therefore, unless and until legislatively or judicially determined otherwise, I am of the opinion that a municipality or other political subdivision may enact an ordinance or administrative regulation establishing a set fee for duplication of public records if said set fee is reflective of the "actual cost of duplication" as defined in s 119.07(1)(a), F.S. (1984 Supp.), but that unit of local government should review such fees on a periodic basis to avoid any danger of conflict with the statutory definition of "actual cost of duplication."
Sincerely,
Jim Smith Attorney General
Prepared by:
Kent L. Weissinger Assistant Attorney General