Mr. Larry Helm Spalding Capital Collateral Representative 1533 South Monroe Street Tallahassee, Florida 32301
Dear Mr. Spalding:
This is in response to your request for assistance in resolving substantially the following questions:
 1. Whether the Office of the Capital Collateral Representative must respond to a public records request for information compiled by that agency which is supplied to the Florida Department of Law Enforcement in the course of an official investigation of allegations of criminal misconduct against present or former employees of CCR?
 2. Are documents furnished by the Office of the Capital Collateral Representative to the Florida Department of Law Enforcement in the course of a criminal investigation by FDLE public records or are they exempt under s. 119.07(3)(d), F.S.?
In summary, it is my opinion that:
 1. The Office of the Capital Collateral Representative must respond to a public records request for information compiled and maintained by CCR which has been supplied to the Florida Department of Law Enforcement in the course of an official investigation or allegations of criminal misconduct against former or present employees of CCR.
 2. Records compiled and maintained by the Office of the Capital Collateral Representative and supplied to the Florida Department of Law Enforcement in the course of a criminal investigation by FDLE are public records subject to inspection if such records are not exempt pursuant to s. 119.07(3)(d), F.S., while in the custody of CCR; the exemption set forth in s. 119.07(3)(d), F.S., cannot be conferred by transferring such records to FDLE.
Questions one and two will be discussed and answered together as they are interrelated.
Your letter states that the Governor has issued an executive order which provides in part that the Florida Department of Law Enforcement (FDLE) shall investigate allegations of criminal misconduct made against certain present and former employees of the Office of the Capital Collateral Representative (CCR).[1]
After the executive order was issued FDLE requested copies of certain documents maintained by CCR. These documents were provided to FDLE. A former employee of CCR has now requested copies of all information provided to FDLE relating to the investigation of criminal misconduct.
The Office of the Capital Collateral Representative is created by statute in the judicial branch of state government.[2] It is the duty of the Capital Collateral Representative to represent, without additional compensation, any person convicted and sentenced to death in Florida who is unable to secure counsel due to his or her indigency or who is determined to be indigent for the purpose of instituting and prosecuting collateral actions challenging the legality of the judgment and sentence imposed against such person.[3]
It is the general policy of this state, as expressed in the Public Records Law, Ch. 119, F.S., that all state, county, and municipal records shall be open for inspection by any person.[4] Section119.07(1)(a), F.S., requires the custodian of a public record to permit the record to be inspected and examined by any person who desires to do so, at reasonable times, under reasonable conditions, and under the supervision of the custodian.[5]
The Public Records Law contains a number of specific exemptions or exceptions from application of the statute and states that "[a]ll public records which are presently provided by law to be confidential or which are prohibited from being inspected by the public, whether by general or special law, are exempt from the provisions of [s. 119.07(1)]."[6] The Supreme Court of Florida has directly construed this section and held that the language "provided by law" contained in the statute "excludes any judicially created privilege of confidentiality and exempts from public disclosure only those public records that are provided by statutory law to be confidential or which are expressly exempted by general or special law."[7]
This section provides more specifically that "[a]ctive criminal intelligence information and active criminal investigative information are exempt from the provisions of [s.119.07(1)]."[8] "Criminal intelligence information" is statutorily defined as information regarding an identifiable person or group of persons which is collected by a criminal justice agency in an effort to anticipate, prevent, or monitor possible criminal activity.[9] The definition of "criminal investigative information" includes information relating to an identifiable person or group of persons compiled by a criminal justice agency while conducting a criminal investigation of a specific act or omission.[10] Thus, to qualify as criminal intelligence or investigative information within Ch. 119, F.S., public records must be compiled by a criminal justice agency either in an effort to anticipate, prevent, or monitor possible criminal activity or must be compiled in the course of conducting a criminal investigation of a specific act or omission.
The records at issue here were apparently compiled and are maintained by the Office of the Capital Collateral Representative and no assertion has been made that, in your custody, these records constitute criminal investigative or intelligence information or are otherwise exempt from production under s.119.07(1), F.S.
The courts of this state have recognized that if no privilege is accorded public records when held by the agency involved, none can be conferred by transferring such records to another agency.[11] In Tribune Company v. Cannella, the district court held that an assistant state attorney could not withdraw public records from public scrutiny by asserting that he had "compiled" such records simply because he subpoenaed such records.[12] Thus, the personnel records of law enforcement officers which had been compiled and maintained by the employing agency prior to a criminal investigation were not criminal investigative or criminal intelligence information within the meaning of Ch. 119, F.S., even if subpoenaed by another law enforcement agency at some point after their original compilation. On appeal to The Supreme Court of Florida this holding was not challenged.
A similar situation arose in Tober v. Sanchez.[13] The relevant issue in that case was whether the official charged by law with the maintenance of public records could transfer actual physical custody of the records to the county attorney in anticipation of a legal action and thereby avoid compliance with a request for inspection pursuant to Ch. 119, F.S. The courts answered in the negative and stated that to permit the head of an agency to avoid his or her responsibility of producing records simply by transferring documents to another agency or office would violate the intent of the Public Records Law, as well as the rule that a statute enacted for the benefit of the public should be liberally construed.
Based on the foregoing, it is my opinion that public records compiled by the Office of the Capital Collateral Representative are not converted into criminal investigative or intelligence information which is exempt from s. 119.07(1), F.S., by the transfer of such records or copies thereof to the Florida Department of Law Enforcement. Therefore, unless some exemption from the Public Records Law attaches to such records as they are maintained by CCR, the provisions of s. 119.07(1), F.S., regarding production and copying would apply.
Sincerely,
Robert A. Butterworth Attorney General
(gh)
[1] Executive Order No. 88-71.
[2] Section 27.701, F.S.
[3] Section 27.702, F.S.
[4] See, s. 119.01(1), F.S.
[5] See, s. 119.011(1), F.S., which defines a public record to include all documents or other material made or received pursuant to law or in connection with the transaction of official business.
[6] Section 119.07(3)(a), F.S.
[7] Wait v. Florida Power and Light Company, 372 So.2d 420,424-425 (Fla. 1979).
[8] Section 119.07(3)(d), F.S. And see, s. 119.011(3)(d), F.S., defining active criminal intelligence information and active investigative information as follows:
 1. Criminal intelligence information shall be considered "active" as long as it is related to intelligence gathering conducted with a reasonable, good faith belief that it will lead to detection of ongoing or reasonably anticipated criminal activities. 2. Criminal investigative information shall be considered "active" as long as it is related to an ongoing investigation which is continuing with a reasonable, good faith anticipation of securing an arrest or prosecution in the foreseeable future. In addition, criminal intelligence and criminal investigative information shall be considered "active" while such information is directly related to pending prosecutions or appeals. The word "active" shall not apply to information in cases which are barred from prosecution under the provisions of s. 775.15 or other statute of limitation.
[9] Section 119.011(3)(a), F.S. And see, s. 119.011(4), F.S., defining criminal justice agency to mean, in part, "any law enforcement agency, court, or prosecutor."
[10] Section 119.011(3)(b), F.S.
[11] Tober v. Sanchez, 417 So.2d 1053, 1055 (3 D.C.A.Fla., 1982). And see, Tribune Company v. Cannella, 438 So.2d 516 (2 D.C.A.Fla., 1983), quashed 458 So.2d 1075 (Fla. 1984), appeal dismissed sub. nom., DePerte v. Tribune Company, 105 S.Ct. 2315 (1985). Cf., Satz v. Blankenship, 407 So.2d 396 (4 D.C.A.Fla., 1981), cert. den.413 So.2d 877 (Fla. 1982) (once tape recordings were given to a criminal defendant by a law enforcement agency the information contained on such tapes became public and a newspaper reporter was entitled to access); Satz v. Gore, 395 So.2d 1274 (4 D.C.A.Fla., 1981) (criminal prosecutions could have resulted from consumer fraud investigations which concluded with civil proceedings and files from investigation contained criminal intelligence and investigative material which was, and might be, used to prevent and monitor possible criminal activity so that disclosure was inappropriate).
[12] Cannella, supra.
[13] Supra at footnote 11.