558 So.2d 487 (1990)
TIMES PUBLISHING COMPANY, INC., a Florida Corporation, Robert A. Butterworth, Attorney General for the State of Florida, and Tampa Television, Inc., a Florida Corporation, Appellants,
v.
CITY OF ST. PETERSBURG, a Florida Municipal Corporation, Robert Ulrich, Mayor, Robert Obering, City Manager, Rick Dodge, Assistant City Manager, Michael Davis, City Attorney, Russ Cline, Manager of Florida Suncoast Dome, Chisox Corporation, a Delaware Corporation, and Chicago White Sox, Ltd., an Illinois Limited Partnership, Appellees.
CHISOX CORPORATION, a Delaware Corporation, and Chicago White Sox, Ltd., an Illinois Limited Partnership, Appellants,
v.
TIMES PUBLISHING COMPANY, INC., a Florida Corporation, Robert A. Butterworth, Attorney General for the State of Florida, and Tampa Television, Inc., a Florida Corporation, Great American Television & Radio Company, Inc., an Ohio Corporation, D/B/a Wtsp-Tv, City of St. Petersburg, a Florida Municipal Corporation, Robert Ulrich, Mayor, Robert Obering, City Manager, Rick Dodge, Assistant City Manager, Michael Davis, City Attorney, Russ Cline, Manager of Florida Suncoast Dome, Appellees.
Nos. 88-02240, 88-02241.
District Court of Appeal of Florida, Second District.
March 16, 1990.
*488 George K. Rahdert and Patricia Fields Anderson of Rahdert & Anderson, St. Petersburg, for Times Publishing Co., Inc.
Mitchell D. Franks, Deputy Atty. Gen., Tallahassee, for Robert A. Butterworth.
Edward D. Foreman and Thomas E. Reynolds, St. Petersburg, for City of St. Petersburg.
Richard H. Malchon, Jr., and Debra K. Smietanski of Robbins, Gaynor & Bronstein, P.A., St. Petersburg, for Chisox Corp. and Chicago White Sox, Ltd.
SCHEB, Acting Chief Judge.
The original proceedings from which this appeal is taken were initiated by the Times Publishing Company, publishers of the St. Petersburg Times (Times) and Tampa Television, Inc. The suit below focused on the applicability of the Public Records Act, Chapter 119, Florida Statutes (1987), to records of negotiations in 1987 and 1988 between the City of St. Petersburg (City) and the Chisox Corporation and Chicago *489 White Sox, Ltd. (referred to collectively as the White Sox). The trial court held that while the City did not violate the Act, the White Sox did, and accordingly, the White Sox were ordered to provide copies of certain documents to the Times. Additionally, the final judgment reserved jurisdiction for the trial court to assess attorney's fees and costs against the White Sox. This appeal by the Times, Tampa Television, Inc., and the White Sox ensued.[1]

Principal Contentions of Appellants
In number 88-02240 the Times principally argues: (1) that the trial court erred in failing to hold that certain handwritten notes made by city officials regarding negotiations and draft leases were public records and (2) that absolving the City of responsibility for its failure to make these records available was contrary to the Public Records Act. In number 88-02241 the White Sox contend: (1) that the court's early termination of the trial violated its rights of due process of law and (2) that any records retained were not public records and, therefore, the trial court erred in retaining jurisdiction to assess fees and costs incident to the litigation against the White Sox.
We agree, in part, with the Times; we reject the contentions of the White Sox.

The Facts
The City and the White Sox negotiated for the White Sox to use the Florida Suncoast Dome located in St. Petersburg. As a condition of the negotiations, the White Sox requested and were assured by the City that all transactions would be strictly confidential. Negotiations commenced in November 1987, but ceased shortly thereafter. In April 1988 negotiations resumed in a more serious vein and the City and the White Sox held a series of bargaining sessions in Chicago, Illinois and St. Petersburg, Florida.
The Public Records Act, chapter 119, Florida Statutes, was specifically discussed at a meeting by the City and the White Sox on April 13, 1988. The day before the meeting, City Attorney Michael Davis disseminated to the mayor, city managers, and manager of Florida Suncoast Dome a six-page memorandum of law. The memorandum included advice relating to handwritten notes of City employees and the consequences of other documents, e.g., draft leases being in the City's possession and custody.
In accordance with the memorandum and in an effort to keep terms of any potential lease confidential, the City, by agreement with the White Sox, did not take possession of proposed agreements. Rather, all documents relative to the continuing negotiations were retained by the White Sox. As a result, the City relied on handwritten notes and the right of its officials to inspect documents at the White Sox' office in Chicago or at the office of its counsel in St. Petersburg.
In an effort to convince the White Sox of the advantages of moving its baseball team to St. Petersburg and to resume negotiations in that direction, City officials met with the White Sox in Chicago on April 27, 1988. It was there that the White Sox presented the City's negotiating team with a rough draft of a lease. It was also there that City Attorney Davis assisted Chicago counsel for the White Sox in drafting a letter to the City which stated:
This letter is provided to you in conjunction with a proposed draft Stadium Lease Agreement dated April 27, 1988 between Chicago White Sox, Ltd. and the City of St. Petersburg. While you are authorized to examine this document in our office, this document is not to leave our possession. You are not authorized to receive, possess, or copy this document. This document is not to come into your *490 possession or custody and is not transmitted to you.
The procedure outlined was followed in Chicago.
In early May, David L. Robbins, an attorney with an office in St. Petersburg, was retained by the White Sox and received several drafts of the proposed agreements. Although he played no role in their creation, his purpose was to retain custody of the documents while making them available for review by City officials when needed. When one document was superseded by another, Robbins would return the earlier document to the White Sox. City officials could only review the leases at Robbins' office, and the documents could not be photocopied.
On May 13, two staff writers of the Times, citing the Public Records Act, requested from the City all records which "related to the city's dealings with the Chicago White Sox," including but "not limited to, all correspondence, any proposed leases on the Florida Suncoast Dome by a major league baseball team and any calculations related to proposed leases." City officials responded that (1) the City refused to produce notes prepared by each city official that were for personal use and "which [were] not shown to or disseminated to other individuals for review or comment," and (2) documents in the custody of the White Sox and its agents were not received by the City, and thus were not public records and would not be produced. In fact, the City refused to acknowledge the existence of any documents in the possession of the White Sox that might be germane to the reporters' request.
On May 19, a similar request for documents was made of the White Sox. The White Sox responded that it had not acted on behalf of the City and that any records in its possession were not public records. Interestingly, that same day a negotiating session involving these documents took place at Robbins' office between City and White Sox officials.
The Times filed suit against the City and the White Sox on May 23. Pursuant to a June 6 directive from Davis, the City made certain documents available, including the legal memorandum and the letter to the City. When Assistant City Manager Richard Dodge was deposed on June 15, other documents were produced.[2] However, the City retained the handwritten notes generated during the agreement reviews and negotiations sessions.
The Times' second amended complaint sought a writ of mandamus, injunction, and declaratory judgment and included in its pleading a motion for an in camera review of the documents concerning the negotiations between the City and the White Sox and the proposed lease agreements. On June 6, the trial court issued a second amended alternative writ of mandamus which directed the City and the White Sox to show cause by what legal authority they should not be required to produce records of their negotiations and pertinent documents. The City filed an answer which generally denied the Times' allegations. The White Sox' response, while making certain specific denials, did not deny the material allegations of the Times' complaint.
After hearings on certain procedural matters, the case went to trial on the Times' second amended complaint on June 22. In support of the City's position that the notes taken by city officials were designed merely for purposes of personal recollection, City Attorney Davis testified that he carried his five-inch stack of notes wherever he went to remember what was in the various draft leases. Another city official testified that portions of the documents were copied verbatim and old notes were *491 used to review new documents. At the end of that day's proceedings, the Times had not completed its presentation, and the judge continued the hearing. When the proceedings resumed on July 1, the Times' representatives appeared but neither the White Sox nor its counsel were present. From the judge's comments in the record, we learn that in the interim an announcement was made on June 30 that the Illinois Legislature had granted certain concessions to the White Sox that made it undesirable for the White Sox to further pursue use of the City's facilities. Although the Times had not concluded its case, the court had conducted an in camera review of the notes and after acknowledging the changed circumstances in Illinois, the trial judge announced that no further testimony was needed.
The trial court entered a final judgment in which it found that the handwritten notes of the city officials were not public records and did not serve a governmental function, but instead "were merely the personal tool of recollection of the writer." The court concluded that the leases were public records. The court further found that the White Sox had "formulated and orchestrated, with no voluntary aid, counsel or assistance from the City, a scheme, plan and design not merely to avoid the Public Records Act of this state, but in fact to evade it." Accordingly, the trial court absolved the City of any responsibility because it was thwarted in any efforts to fulfill its duty under the Public Records Act by the White Sox' actions and because of the enormous potential economic benefits to the City and the citizens in the area. The court ordered the White Sox to provide the Times with copies of all leases and draft documents from the inception of the negotiations and retained jurisdiction to award fees and costs on behalf of the Times. The order also specifically stated that the court would not entertain any motions for rehearing.

Recognition of Mootness of Public Records Issue
At the outset, we recognize that the issue before us regarding whether the lease documents are public records is now moot. Courts do not ordinarily resolve disputes unless a case or controversy exists and resolution would have some practical purpose. See Honig v. Doe, 484 U.S. 305, 317, 108 S.Ct. 592, 600, 98 L.Ed.2d 686, 703 (1988); Allard v. DeLorean, 884 F.2d 464 (9th Cir.1989). However, since the instant situation is capable of repetition while evading review, we find it appropriate to address the issues before us concerning applicability of the Public Records Act for future reference. Tribune Co. v. Cannella, 458 So.2d 1075 (Fla. 1984).
We now turn to the points raised by the City and the White Sox.

I. Handwritten Notes as Public Records
Whether handwritten notes of public officials are public records turns on whether they were "prepared in connection with official agency business which [was] intended to perpetuate, communicate, or formalize knowledge of some type." To be contrasted with public records are materials "prepared as drafts or notes, which constitute mere precursors of governmental `records' and are not, in themselves, intended as final evidence of the knowledge to be recorded." Shevin v. Byron, Harless, Schaffer, Reid and Assoc., Inc., 379 So.2d 633, 640 (Fla. 1980).
After reviewing the trial testimony, the depositions, arguments of counsel, and an in camera review of the notes of the City's participants, Davis, Dodge, Cline, and Gifford, the trial judge concluded that the notes were not, nor had they ever been, public records. The court found that "[t]hese notes served no governmental function" but "were merely the personal tools of recollection of the writer."
On appeal, it is the obligation of the appellant to demonstrate error on the part of the trial court. The notes were proffered to the trial court, reviewed in camera, sealed, and returned to counsel. The Times concedes that it did not request that the notes or copies thereof be sealed and actually made a part of the record. The trial court's determination involved a factual finding as to whether the notes constituted *492 public records. In the absence of a record reflecting the material reviewed by the trial judge, we cannot review the trial court's findings. As we pointed out in Bei v. Harper, 475 So.2d 912 (Fla. 2d DCA 1985), although Florida Rule of Appellate Procedure 9.200(f)(2) provides that the court direct a party to supply omitted parts of an incomplete record, the rule is not intended to cure inadequacies resulting from a party's failure to make a record during the proceedings. Consequently, we must affirm the trial court's judgment on this point.

II. City's Role in Denial of Access to Public Records
In determining whether the City violated the Public Records Act preventing public access to the lease documents, we note the touchstone of the Act: "It is the policy of this state that all state, county, and municipal records shall at all times be open for a personal inspection by any person." § 119.01(1), Fla. Stat. (1989).
An open government is crucial to the citizens' ability to adequately evaluate the decisions of elected and appointed officials. Accordingly, courts have liberally construed the Public Records Act. Wolfson v. State, 344 So.2d 611 (Fla. 2d DCA 1977); Tribune Co. v. In re Public Records, 493 So.2d 480, 483 (Fla. 2d DCA 1986), review denied sub. nom. Gillum v. Tribune Co., 503 So.2d 327 (Fla. 1987). In fact, the right to access public documents is virtually unfettered, save only the statutory exemptions designed to achieve a balance between an informed public and the ability of the government to maintain secrecy in the public interest. Lorei v. Smith, 464 So.2d 1330, 1332 (Fla. 2d DCA), review denied, 475 So.2d 695 (Fla. 1985). None of the exceptions enumerated in the Public Records Act existed in this case. Furthermore, the judiciary cannot create a privilege of confidentiality to accommodate the desires of local government. See Wait v. Florida Power & Light, 372 So.2d 420, 425 (Fla. 1979).
The trial judge concluded that it was the White Sox that "formulated and orchestrated, with no voluntary aid, counsel or assistance from the City, a scheme, plan, and design not merely to avoid the Public Records Act of this state, but in fact to evade it." The court further found that "[b]ecause of the obvious enormous economic benefits to the citizens of this entire geographic area, the City of St. Petersburg and its agents and designated employees had no choice but to involuntarily acquiesce to this scheme of secrecy. The City had no other alternative." The record, however, contradicts this conclusion.
It was the City that prepared the legal memorandum which advised the White Sox about the public records law. The city attorney assisted in drafting the letter which outlined the procedure for reviewing documents designed to avoid required disclosure. The White Sox' attorney incorporated the City attorney's suggestions into a letter on its stationery and gave it to the City. Pursuant to the plan, the City purposely avoided taking possession of draft leases and did not keep documentation of the negotiations, but instead went to the White Sox' local counsel's office to review documents. By these actions, the City improperly delegated its record keeping functions to the White Sox. See Tober v. Sanchez, 417 So.2d 1053 (Fla. 3d DCA 1982), review denied, Metropolitan Dade County Transit Agency v. Sanchez, 426 So.2d 27 (Fla. 1983) (Official charged by law with maintenance of public records may not transfer actual physical custody of records to county attorney and thereby avoid requests for inspection under the Public Records Act). Once the City began actively inspecting, discussing and revising the various documents, it had an official duty to demand that the documents or copies thereof be delivered to the City. See § 119.06, Fla. Stat.
The City officials' actions were inconsistent with the purpose of the Public Records Act. Although City officials may have intended merely to avoid the law, the effect of their actions was evasive. City officials actively participated in the creation of the policy of non-retention, the effect of which was to evade the broad policy of open *493 government. Accordingly, that portion of the trial court's order discharging the City from liability is reversed.

III. White Sox' Claim of Denial of Due Process Rights
Central to the action filed by the Times was its petition for a writ of mandamus. At the June 22 hearing on the petition, the Times began presenting its evidence. Counsel for the White Sox chose not to examine the witnesses called by the Times. When the hearing resumed on July 1, neither the White Sox nor its counsel appeared. The record does not reveal any reason for the absence of the White Sox or its counsel. After receiving word that the White Sox had decided not to move to St. Petersburg, the trial court entered its final judgment without the Times completing presentation of its evidence or resting its case and before either the City or the White Sox presented evidence. Furthermore, the order stated that the court would not entertain any motion for rehearing on the matter. The White Sox allege that consequently there was no opportunity for it to present evidence in defense of the Times' claims. Thus, the White Sox argue the entry of a final judgment against it violated its due process rights.[3] We disagree.
In a mandamus action, once it has been determined that the complaint establishes a prima facie case that the defendants have breached a legal duty, the court issues an alternative writ. Fla.R.Civ.P. 1.630. The alternative writ requires the defendants either to perform the neglected act or to show cause why final judgment in the form of a peremptory writ should not be rendered. Conner v. Mid-Florida Growers, Inc., 541 So.2d 1252 (Fla. 2d DCA 1989); Fla.R.Civ.P. 1.630(d)(3). Once the alternative writ here was entered, the White Sox could either move to quash the writ or file a return. The White Sox filed a return, which placed upon it the burden to establish material facts sufficient to defeat the Times' claim. See State v. Haskell, 72 Fla. 176, 72 Fla. 244, 72 So. 651 (1916). Their response, quoted in part below, however, was essentially a mere general denial presenting no material issues of fact to be resolved:
All drafts were specifically prepared by legal counsel for said Defendants and were therafter (sic) shown to representatives of the CITY OF ST. PETERSBURG only upon express conditions that said drafts would not be photocopied, recopied verbatim, removed from the possesion (sic) of said Defendants or the contents otherwise disclosed to other individuals who were not officials of the CITY OF ST. PETERSBURG or otherwise necessary participants in the discussions. Said Defendants placed the aforesaid conditions upon the viewing of the proposed drafts or portions of same specifically in order to maintain confidentiality until and unless a comprehensive agreement was reached with the CITY OF ST. PETERSBURG and, absent the City's acquiescence in those conditions, access to said proposed drafts of use agreements (sic) or portions thereof would not have been granted to the negotiators for the CITY OF ST. PETERSBURG.
The Response of the White Sox failed to set forth issues of material fact. This general denial was insufficient as a matter of law. Therefore, the trial court did not err in issuing the final peremptory writ without a full evidentiary hearing. State ex rel. Suwanee River Bridge Co. v. Sholtz, 119 Fla. 460, 158 So. 812 (1935); Bal Harbour Village v. State ex rel. Giblin, 299 So.2d 611 (Fla. 3d DCA 1974), cert. denied, 311 So.2d 670 (Fla. 1975).
The record does not reveal any request by the White Sox to present testimony to show cause why a peremptory writ should not issue, nor do the White Sox raise on appeal the trial court's refusal to allow *494 rehearing. Moreover, the White Sox' argument on appeal does not raise factual questions about actual possession of documents or unwillingness to grant access. It raises only the legal query of whether the documents at issue were public records.
There was no objection by the White Sox or the City to the court's summary termination of the evidentiary hearing. Even assuming, arguendo, that such a termination was inappropriate, after considering the White Sox' arguments on appeal, which are legal in nature, and its failure on appeal to show any material facts in dispute, a remand for further evidentiary hearing would be pointless. In sum, based on the specific circumstances here, we do not find any violation of the White Sox' rights of due process.

IV. Assessment of Attorney's Fees and Costs against White Sox
The last issue we address is whether the trial court properly ruled that the White Sox would be assessed attorney's fees and costs pursuant to section 119.12, Florida Statutes. That section permits the imposition of attorney's fees and costs against an "agency" that unlawfully refuses to permit inspection of public records. The White Sox argue that it was not an agent of the City as defined in section 119.011(2), Florida Statutes. Furthermore, as previously noted, the White Sox contend the records in its possession were not public records.
The Public Records Act recognizes the danger that exists if private entities are allowed to demand that they retain custody of documents as a condition of doing business with a governmental body. Thus in section 119.011(2), the legislature provides that a "private agency, person, partnership, corporation or business entity" may become an "agency" when "acting on behalf of any public body." The White Sox forcefully argue that it was a business adversary of the City and not its agent. We agree with this basic proposition. Nevertheless, the White Sox shared with the City the common goal of negotiating for the relocation of its baseball team to St. Petersburg. It was the White Sox that demanded that it retain custody of all proposed lease documents and other negotiation records in order to insure that negotiations would be confidential.
We hasten to recognize that mere preparation of documents for submission to a public body does not create public records. Therefore, the draft lease documents prepared by the White Sox for submission to the City cannot be said to have constituted public records at the time of preparation. However, these same documents could and, in fact, did later acquire the character of public records. Once exhibited to city officials as part of the bargaining process, where the documents were revised as a result of the mutual negotiations between the parties, the draft leases and other related documents became public records. To hold otherwise would be to make an artificially restrictive interpretation permitting public agencies to circumvent the purpose of the law and the public's "right to know." As a consequence, the public would be unable to have input into the actions taken by its government.
Section 119.07(1)(a), Florida Statutes, requires that "[e]very person who has custody of a public record shall permit the record to be inspected and examined by any person desiring to do so...." As noted, the White Sox retained Mr. Robbins, a local attorney, who carried out the procedure set by the White Sox for reviewing the documents. This effectively prevented any citizen from knowing what was transpiring between their elected representatives and the White Sox. Indeed, even the elected officials were prevented from viewing the results of their negotiations at the seat of local government. There was no significant difference between the role played by Mr. Robbins and that of a government employed records custodian, other than that the general public did not have access to the documents. See Fritz v. Norflor Constr. Co., 386 So.2d 899 (Fla. 5th DCA 1980) (engineering firm was an "agent" within the meaning of the Public Records Act where it acted as the city's water engineer). In fact, it is uncontroverted that Mr. Robbins' office became the de facto official repository of documents generated *495 as a result of the negotiations. Thus, by its own actions, the White Sox assumed custody of the public records sought to be reviewed.
Writers from the Times made demand upon the White Sox for access to these documents and the White Sox refused. Section 119.12(1), Florida Statutes, provides that "[i]f a civil action is filed against an agency to enforce the provisions of [the Public Records Act] and if the court determines that such agency unlawfully refused to permit a public record to be inspected ..., the court shall assess and award, against the agency responsible, the reasonable costs of enforcement including reasonable attorneys' fees." We think the intent of the statute is to reimburse a party who incurs legal expenses when seeking permission to view records wrongfully withheld, even if access is denied based on a good faith but mistaken belief that the documents are exempt. See News & Sun-Sentinel Co. v. Palm Beach County, 517 So.2d 743 (Fla. 4th DCA 1987). Accordingly, we hold that the trial court did not err in finding that the White Sox violated the Public Records Act by denying access to the draft leases and thus it properly held that attorney's fees and costs may be assessed.

Conclusion
In number 88-02240, in the absence of there being any record evidence, we affirm the trial court's judgment with respect to the handwritten notes. Otherwise, we reverse the judgment regarding the City and remand with directions that the trial court permit the Times to proceed on its request for fees and costs. Standard Guaranty Ins. Co. v. Quanstrom, 555 So.2d 828 (Fla. 1990); Florida Patient's Compensation Fund v. Rowe, 472 So.2d 1145 (Fla. 1985).
In number 88-02241, we affirm the trial court's judgment as to the Times.
We grant as to entitlement the Times' petition for attorney's fees on appeal and remand for determination of fees to be awarded against the City and White Sox in accordance with Quanstrom and Rowe.
Affirmed in part; reversed in part; and remanded.
LEHAN and FRANK, JJ., concur.
NOTES
[1] The appeals by the Times, Tampa Television (which took no active role in the appellate proceeding), and the White Sox, along with number 88-02244 filed by Great American Television & Radio Company, Inc. (an intervenor), were initially consolidated for purposes of the record only. Subsequently, number 88-02244 was voluntarily dismissed. Counsel in the remaining appeals requested a consolidated oral presentation. As the appeals arise from the same factual setting and were argued together, we write one opinion addressing the issues.
[2] Appellant Times argues that the documents produced were not furnished as promptly as required by the Public Records Act. The trial court did not make any specific findings as to whether the production of documents was tardy. In light of our other holdings in this opinion, this point is moot. Further, unlike the issue of whether the handwritten notes and leases here constitute public records, matters not heretofore definitively answered by decisional law, the time requirements for production of public records is governed by Chapter 119, Florida Statutes, which has been interpreted in several instances. See, e.g., Tribune Co. v. Cannella, 458 So.2d 1075 (Fla. 1984).
[3] In its reply brief, the City, which did not file a cross appeal, mentions that the trial court's order did not afford it an opportunity to present evidence at the hearing and because the judgment was not adverse to the City, it had no basis to object. We note, however, the City merely filed a general denial and has not alleged any material facts at issue before the trial court and does not point out any material issues of fact on appeal. The facts acknowledged by the City reveal that it circumvented the requirements of Chapter 119.