John B. Fuller Attorney for the Ocala Housing Authority
QUESTION:
May a public housing authority withhold its records from disclosure on the grounds that the records have been subpoenaed by the state attorney and have been transferred to that office?
SUMMARY:
Until determined to the contrary by the courts of this state, a public housing authority may not withhold its records from disclosure on the grounds that the records have been subpoenaed by the state attorney and transferred to that office.
The Ocala Housing Authority (Authority) is a public housing authority existing pursuant to Ch. 421, F.S.[1] As a public agency created pursuant to statute, the Authority clearly is an "agency" subject to the Public Records Law.[2]
Chapter 119, F.S., defines public records to include all documents, papers, letters or other materials, regardless of physical form, made or received in connection with the transaction of official business of an agency.[3] Pursuant to s.119.07, F.S., such records are open for public inspection and copying unless the Legislature has exempted them from disclosure.[4]
According to your letter, the State Attorney's Office of the Fifth Judicial Circuit recently issued a subpoena for essentially all of the public records of the Ocala Housing Authority since 1987.[5]
Pursuant to this subpoena, a large number of records have apparently been removed from the physical possession of the Authority for the convenient review by the state attorney at his office. The Authority, however, has received requests from the media and public to inspect and copy the records of the housing authority and, therefore, asks whether it has to comply with requests to inspect and copy its records which are not physically in its possession due to the investigative subpoena.
In Tribune Company v. Cannella,[6] the court held that public personnel records of a police department did not lose their status as public records simply because the records were subpoenaed by the state attorney as part of a criminal investigation.[7] This office in AGO 88-25, relying in part on Tribune Company v. Cannella, supra, stated that public records maintained and compiled by the Office of the Capital Collateral Representative would not be rendered exempt under the statutory exemption for active criminal intelligence or investigative information by providing such records to the Florida Department of Law Enforcement.
The principle that public documents of an agency may not be withdrawn from public inspection by the transfer of such documents to another agency has been applied in other situations. For example, in In re Grand Jury Investigation Spring Term 1988,[8]
the court held that county and state criminal justice agencies were required to provide public access to all their records compiled independently of and prior to the date of the grand jury's initial inquiry into the subject. It had been argued that the fact that the documents in question had been presented to the grand jury cloaked them in the secrecy afforded grand jury investigations. The court, however, stated that such records were separate and separable from the records of the grand jury investigation and were, therefore, subject to public inspection.
You note that the court in Tribune Company v. Cannella,[9]
referred to several federal decisions in holding that an assistant state attorney could not withdraw otherwise public records from public scrutiny by asserting he "compiled" the records simply because he subpoenaed them.[10] You question whether such a conclusion reached is still viable in light of a decision by the United States Supreme Court in John Doe Agency v. John Doe Corporation,[11] which interpreted a provision of the federal Freedom of Information Act (FOIA).[12]
In that opinion, the court held that the term "compilation" for purposes of a FOIA exemption for records or information compiled for law enforcement purposes[13]
included materials collected and assembled from various sources or other documents and thus covered documents collected by the government originally for non-law enforcement purposes.[14]
As you note, the Supreme Court's opinion in John Doe regarding the interpretation of the federal law is not binding upon the state. There are significant differences between the federal FOIA and Ch. 119, F.S., which has been broadly construed by the courts of this state. Moreover, until this matter is addressed by the state courts, this office is bound by the interpretation of Ch.119, F.S., by the courts which have clearly stated that an otherwise disclosable public record is not removed from public scrutiny merely because it has been subpoenaed by the state attorney's office.
Additionally, the Florida courts have made it clear that an agency may not avoid its responsibilities under the Public Records Law by claiming that the records are not in the physical possession of the custodian. For example, in Tober v. Sanchez,[15] the court held that the official charged with maintenance of records may not transfer actual physical custody of records to the county attorney and thus avoid compliance with a request for inspection under Ch. 119, F.S.[16]
Thus, the Authority is not relieved of its responsibilities under Ch. 119, F.S., by claiming that the records are no longer in its physical possession. The Authority, however, is under a duty to comply with the subpoena issued by the state attorney. As a means of complying with both responsibilities, it may be advisable for the Authority to maintain copies of those records which have been sent to the state attorney's office.[17] If the Authority no longer has possession of the records or copies thereof, access to such records may be obtained through the state attorney's office inasmuch as such records under Tribune Company v. Cannella, supra, would not constitute criminal investigative information.
Accordingly, I am of the opinion, until determined to the contrary by the courts of this state, that a public housing authority may not withhold its records from disclosure on the grounds that the records have been subpoenaed by the state attorney and transferred to that office.
RAB/tjw
[1] See, Part I, Ch. 421, F.S., specifically s.421.04, F.S., which provides for the creation of a municipal housing authority as a public body corporate and politic which may exercise the powers granted thereunder when the governing body of the municipality has by resolution declared the need for such an authority to function within the municipality.
[2] See, s. 119.011(2), F.S., defining "Agency" to mean "any state, county, district, authority, or municipal officer, department, division, board, bureau, commission, or other separate unit of government created or established by law and any other public or private agency, person, partnership, corporation, or business entity acting on behalf of any public agency."
[3] See, s. 119.011(1), F.S., defining "Public record."
[4] See, s. 119.07(1)(a), F.S., requiring the custodian of public records to permit the records to be inspected and examined by any person desiring to do so, at reasonable times, under reasonable conditions, and under the supervision of the custodian. And see, s. 119.07(3), F.S., providing that all public records presently provided by law to be confidential or prohibited from public inspection are exempt from the disclosure provisions of Ch. 119, F.S.); Wait v. Florida Power and Light Company, 372 So.2d 420 (Fla. 1979).
[5] See, AGO 90-48 stating that investigative subpoenas of the state attorney issued as part of an active criminal investigative or intelligence gathering operation are exempt from disclosure prior to their becoming part of the case files maintained by the clerk of the court.
[6] 438 So.2d 516 (2 D.C.A. Fla., 1983), quashed onother grounds, 458 So.2d 1075 (Fla. 1984), appeal dismissedsub nom., DePerte v. Tribune Company, 105 S.Ct. 2315 (1985).
[7] See, s. 119.07(3)(d), F.S., exempting active criminal investigative information from the disclosure requirements of s. 119.07(1), F.S.; and s. 119.011(3)(b), F.S., which defines "Criminal investigative information as "information with respect to an identifiable person or group of persons compiled by a criminal justice agency in the course of conducting a criminal investigation of a specific act or omission, including, but not limited to, information derived from laboratory tests, reports of investigators or informants, or any type of surveillance." See also, s. 119.07(3)(d), F.S., defining "Active." Cf., s. 119.011(3)(a) and (4), F.S., respectively defining "Criminal intelligence information" and "Criminal justice agency."
[8] 543 So.2d 757 (2 D.C.A. Fla., 1989).
[9] 438 So.2d 516 (2 D.C.A. Fla., 1983), quashed onother grounds, 458 So.2d 1075 (Fla. 1984), appeal dismissedsub nom., DePerte v. Tribune Company, 105 S.Ct. 2315 (1985).
[10] 438 So.2d at 523, citing, FBI v. Abramson,456 U.S. 615 (1982); Gregory v. FDIC, 470 F. Supp. 1329 (D.D.C. 1979),affirmed in part, reversed in part on other grounds,631 F.2d 896 (D.C. Cir. 1980).
[11] 110 S.Ct. 471 (1989).
[12] 5 U.S.C. § 552.
[13] 5 U.S.C. § 552(b)(7).
[14] 110 S.Ct. at 476.
[15] 417 So.2d 1053, 1054 (3 D.C.A. Fla., 1982),petition for review denied sub nom., Metropolitan Dade County Transit Agency v. Sanchez, 426 So.2d 27 (Fla. 1983).
[16] And see, Times Publishing Company v. City of St. Petersburg, 558 So.2d 487 (2 D.C.A. Fla., 1990) in which the court found that Ch. 119, F.S., was violated when the city avoided taking possession of negotiation documents reviewed and discussed by both parties and left such documents with the private entity's attorney, stating:
 The City officials' actions were inconsistent with the purpose of the Public Records Act. . . . City officials actively participated in the creation of the policy of non-retention, the effect of which was to evade the broad policy of open government.
Cf., Myakka Valley Ranches Improvement Association, Inc. v. City of Sarasota, Case No. 85-1248 CA-01 (12th Cir. Sarasota Co., May 22, 1985), requiring the city to maintain copies of its nonexempt public records within the city limits when the originals were held be agents of the city outside the city's boundaries.
[17] Cf., Myakka Valley Ranches Improvement Association, Inc. v. City of Sarasota, supra. It also appears that the Authority could have supplied the state attorney with copies of the documents while retaining the originals since the subpoena states that the Authority officials may comply with the terms of the subpoena without personal appearance by delivering copies of the materials described in the subpoena to the state attorney's investigators listed therein. And see, Tribune Company v. Cannella, supra; Times Publishing Company v. City of St. Petersburg, supra.