FRANK, Judge.
The Florida Department of Community Affairs and the Lee County Board of Commissioners attack a final summary judgment divesting the Department of jurisdiction to review proposed wetslip construction at a residential waterfront community known as Bay Beach, and the issuance of a peremptory writ of mandamus requiring the County to issue building permits for the construction. Royal Pelican Development, Casa Marina Development, and Star-dial Investments, are the owners and developers of Bay Beach. Their objective is to construct individual wetslips or boat docks to be sold to owners of residential units at Bay Beach. We reverse and vacate the final summary judgment.
The resolution of this matter is controlled by section 380.06, Florida Statutes, part of the Florida Environmental Land and Water Management Act of 1972, enacted to protect Florida’s environment and to facilitate orderly and well planned development throughout the state. See § 380.012, Fla.Stat. (1989). The Department is the state land planning agency responsible for carrying out the Act’s regulatory program and for determining whether particular developments “shall be presumed to be of regional impact.” § 380.06(2)(a), Fla.Stat. (1989). If a newly proposed development is determined to be a development of regional impact (DRI), then it must undergo a review and approval process, ideally before commencement of the project. § 380.06, Fla.Stat. (1989). Section 380.0651, Florida Statutes, identifies twelve categories of development presumed to be of regional impact. The category for port facilities, relevant to this proceeding, contains a minimum DRI threshold expressed in terms of physical capacity:
Port facilities. — The proposed construction of any waterport or marina is required to undergo development-of-regional-impact review, except one designed for:
l.a. The wet storage or mooring of fewer than 150 watercraft < used exclusively for sport, pleasure, or commercial fishing, ....
§ 380.0651(3)(e), Fla.Stat. (1989). If a prospective developer of a marina or port facility is uncertain whether a proposed development is a DRI, a determination may be requested from the Department. The Department is then required to issue a binding letter of interpretation. Such letters “bind all state, regional, and local agencies, as well as the developer,” and thus constitute final agency action. § 380.06(4)(a), Fla.Stat. (1989).
On November 11, 1974, the developers of Bay Beach submitted to the Division of State Planning[1] an application for a “binding letter of vested rights” in accordance with section 380.06. On February 11, 1975, the Division issued a letter designating the project a DRI, which also stated that based on the information provided in the development plan, the developers of Bay Beach would “not be required to comply with the provisions of Section 380.06, Florida Statutes.” Lee County issued a final development order, and construction of Bay Beach began. One hundred forty-nine wetslips were built at Bay Beach without interference from the Department or the County. *1166 In July of 1989, the developers requested an amendment to the final development order allowing construction of 79 additional wetslips. In a letter to the developers, the County tentatively approved the proposed construction with the condition that “[tjhese docks are permitted as accessory to the permitted principal use and may only be used by occupants of the corresponding units.” Ten building permits were issued to allow construction to begin on the first 10 additional wetslips. On March 7, 1990, however, concerned that the new construction might surpass the statutorily prescribed numerical threshold, thus triggering review by the Department, the County ceased issuing permits and placed a stop work order on the ten permits it had issued. The developers responded by seeking declaratory relief and a peremptory writ of mandamus against the County, the end purpose of the litigation being the achievement of all permits necessary to complete the proposed construction. By stipulation, the Department intervened in the mandamus proceedings. The developers amended their complaint to include allegations against the Department as well, asking, among other things, for a declaration that the wetslip construction did not constitute a “development” as the term is used in Chapter 380. Thereafter, the developers moved for partial summary judgment on three counts of their four count complaint. The motion was granted and the trial court found as a matter of law that the “proposed wetslips do not constitute a ‘development’ under Section 380.04,” but instead constitute a “marina” as that term is used in section 380.0651(3)(e). The trial court based these conclusions upon the notion that subsection 380.04(3)(d) excludes from the definition of development “[t]he use of any structure or land devoted to dwelling uses for any purpose customarily incidental to enjoyment of the dwelling.” Hence, said the trial court, the Department was without jurisdiction to regulate the additional 79 wetslips. Moreover, because the County had not identified any unfulfilled conditions justifying withholding building permits for construction of the docks, the trial court entered a peremptory writ of mandamus requiring the County to issue all permits it had been withholding.
The trial court’s declaration that the proposed construction does not equate with a “development” is inconsistent with the declaration that the “structures proposed constitute a ‘marina’.” Once a design exceeds the numerical limitation found in section 380.0651(3)(e), a marina is a “development” subject to DRI review. The developers concede that the additional construction will exceed the statute’s threshold of 150 wetslips but they seek to escape that restriction by claiming the 1975 “binding letter of vested rights” permits the excessive enlargement. We are convinced that the proposed “marina” is subject to DRI review and that the Department was erroneously ousted of jurisdiction by the trial court's final summary judgment.
We distill a factual issue from the record foreclosing summary judgment. The developers have urged that the 1975 “binding letter” contemplated all development at Bay Beach including the newly proposed wetslip construction at issue in this proceeding. We do not agree. The development plans found in the record, projecting boat slips intended for Bay Beach, are dated years after the issuance of the binding letter. The affidavit of J. Thomas Beck, submitted in opposition to the developers’ motion for summary judgment, denies that boat slips were considered by the state planning agency in 1975 when it reviewed the developers’ application. It is plain beyond cavil that an issue of fact remains, i.e., whether the Division sanctioned the magnitude of wetslip construction now asserted by the developers to have been permitted in the 1975 “binding letter.” Without an evidentiary hearing “neither the Department nor the local government can determine what the developer has a right to do, nor can either determine ... whether the vested plan is being carried out.” Compass Lake Hills Development Corp. v. State, Dept. of Community Affairs, Div. of State Planning, 379 So.2d 376, 379 (Fla. 1st DCA 1979).
Just as the presence of a fact question is fatal to the granting of a summary *1167 judgment, so, too, does it bar the entry of a peremptory writ. A peremptory writ of mandamus is improper when material issues of fact are unresolved. See Times Pub. Co., Inc. v. City of St. Petersburg, 558 So.2d 487 (Fla. 2d DCA 1990). Because the record discloses an issue of fact bearing upon the proper implementation of Chapter 380 and the ability of Lee County, within the statutory scheme, to issue construction permits, we reverse and vacate the peremptory writ.
This matter is remanded for further proceedings consistent with this opinion.
CAMPBELL, A.C.J., and HALL, J., concur.

. Until July 1, 1979 the Division of State Planning, within the Department of Administration, was the state land planning agency statutorily responsible for administering and enforcing Chapter 380. After the foregoing date, these duties were assigned to the Department of Community Affairs. See 1979 Fla.Laws, Ch. 190, § 49.