The Honorable Robert F. Milligan Comptroller of Florida The Capitol Tallahassee, Florida 32399-0350
Dear Comptroller Milligan:
You ask substantially the following questions:
1. Are the registration and disciplinary records on securities dealers doing business in Florida that are held by the National Association of Securities Dealers Central Registration Depository subject to Chapter 119, Florida Statutes?
2. If so, does an arbitration panel of the National Association of Securities Dealers have the authority to order the expungement of records?
In sum:
1. The application and disciplinary reports maintained by the National Association of Securities Dealers Central Registration Depository that are used by the Department of Banking and Finance in licensing and regulating securities dealers doing business in this state do constitute public records and are subject to Chapter 119, Florida Statutes.
2. Such records are subject to the statutory restrictions on destruction of public records, which require agencies to adopt a schedule for the disposal of records no longer needed, subject to the approval of the Division of Library and Information Services of the Department of State.
The Department of Banking and Finance (department) is responsible for the administration and enforcement of Chapter 517, Florida Statutes, the "Florida Securities and Investor Protection Act." Such duties include the registration of individuals and entities desiring to conduct a securities business within the state and the enforcement of sales practice regulations. In the course of those duties, the department maintains application and disciplinary records on each registrant. You state, however, that Florida, like many other states, accepts applications for registration and maintains disciplinary records on registrants through electronic filings with the National Association of Securities Dealers Central Registration Depository (CRD).
According to your letter, the CRD system is a computer system operated by the National Association of Securities Dealers (NASD) and is the joint property of NASD and the North American Securities Administration Association (NASAA), of which Florida is a member. The CRD is available to the states through a contract executed by NASAA, on behalf of all member states, and the NASD. By filing through the CRD, an applicant files one application for registration, designating the states in which he or she desires registration. The application is then electronically transmitted to each of the states indicated. You state that when Florida receives the application electronically, it makes the determination, based on past disciplinary history, to register or deny registration to the applicant. This decision is then entered into the CRD system.
You describe the CRD as being used by state and federal securities authorities for regulatory purposes. All state and federal enforcement actions, customer complaints and arbitrations against registrants are maintained on the CRD database and regulators therefore have access to the disciplinary history of a registrant in other jurisdictions. Thus, the system serves as a national clearinghouse of information. According to your letter, Florida uses this shared information in monitoring the activities of a broker or firm doing business within the state, or in evaluating an application.
Thus, you state that the CRD functions as a warehouse for Florida securities registration and disciplinary information. Recently, however, the NASD arbitration panels have begun issuing expungement orders that call for the expungement of those CRD records giving rise to arbitration. You have expressed your concern about the effect of such expungements.
Chapter 119, Florida Statutes, Florida's Public Records Act, defines "[p]ublic records" to include "all documents, . . . or other material, regardless of the physical form, characteristics, or means of transmission, made or received pursuant to law orordinance or in connection with the transaction of officialbusiness by any agency."[1] (e.s.) The Florida Supreme Court has interpreted this definition to encompass all materials received by an agency in connection with official business that are used to perpetuate, communicate, or formalize knowledge.[2] All such materials, regardless of whether they are in final form, are open for public inspection and copying unless the Legislature has exempted them from disclosure.
Florida courts have recognized that an agency's responsibility to provide public records is as broad in scope as the term "public records." The intent of the Legislature in enacting the Public Records Act and the impetus behind the adoption of Article I, section 24, Florida Constitution, was the facilitation of public access to governmental records.[3] The effect of Chapter 119, Florida Statutes, is to provide for an expedient and practical, not theoretical, inspection of public records. Thus, any non-exempt record must be available for inspection at reasonable times and under reasonable circumstances.
An agency may not avoid its responsibility under the Public Records Act by transferring custody of a record to another entity. For example, in Tober v. Sanchez,[4] the court held that an official charged with the maintenance of records may not transfer actual physical custody of records to the county attorney in an effort to avoid compliance with a request for inspection pursuant to the Public Records Act. Nor may it avoid compliance with the provisions of Chapter 119, Florida Statutes, by refusing to accept custody of records it uses in carrying out its governmental function. For example, in Times Publishing Company, Inc. v. Cityof St. Petersburg,[5] the court considered whether the Public Records Act was violated when a city and private corporation agreed to keep all negotiation documents between the city and corporation relating to the lease of a municipal stadium confidential and in the custody of the corporation only. Finding that the corporation and city had sought to circumvent the Public Records Act, the court ruled that both the corporation and the city had violated Chapter 119, Florida Statutes.
Where a public agency has delegated its responsibility to maintain records necessary to perform its functions, such records will be deemed accessible to the public. In Harold v. Orange County,Florida,[6] the court held that where a county had hired a private company to be the construction manager on a renovation project to show compliance with a "fairness in procurement ordinance," the company's records for this purpose were public records.
Rather than seeking to avoid compliance with Chapter 119, Florida Statutes, you indicate that the Department of Banking and Finance uses the CRD as a more effective and efficient means of carrying out its statutory duties of licensure and regulation of securities dealers doing business in this state. The applications and disciplinary reports maintained by the CRD are used by the department in licensing and regulating securities dealers doing business in this state, and as such would appear to constitute public records. The fact that the department permits the CRD to maintain those records does not alter the status of such records.
Section 119.01(4), Florida Statutes, however, requires agencies to establish a program for the disposal of records without sufficient legal, fiscal, administrative, or archival value pursuant to the retention schedules established by the records and information management program of the Division of Library and Information Services of the Department of State. Pursuant to section 119.041, Florida Statutes, and with the exception of certain agency orders, records no longer needed must be systematically disposed of by public officials subject to the consent of the division in accordance with section 257.36, Florida Statutes.
Thus, as provided above, expungement of the records of the Department of Banking and Finance must comply with those schedules adopted by the department and approved by the Department of State, and failure to adhere to those schedules could be construed as a violation of Chapter 119, Florida Statutes. The Department of Banking and Finance, therefore, may wish to review its current retention schedule to determine whether such schedule needs to be revised, subject to the approval of the Department of State, to specifically address the CRD records that are used by the department in licensing and regulating securities dealers doing business in this state.
Accordingly, I am of the opinion that the application and disciplinary reports maintained by the CRD and used by the department in licensing and regulating securities dealers doing business in this state are subject to the statutory restrictions on destruction of public records, which require agencies to adopt a schedule for the disposal of records no longer needed, subject to the approval of the Division of Library and Information Services of the Department of State.
Sincerely,
Robert A. Butterworth Attorney General
RAB/tjw
[1] Section 119.011(1), Fla. Stat.
[2] See, Shevin v. Byron, Harless, Schaffer, Reid andAssociates, Inc., 379 So.2d 633 (Fla. 1980).
[3] See, s. 119.01(1), Fla. Stat., and Art. I, s. 24(a), Fla. Const. 
[4] 417 So.2d 1053 (Fla. 3d DCA 1982), review denied sub nom.,Metropolitan Dade County Transit Agency v. Sanchez, 426 So.2d 27
(Fla. 1983).
[5] 558 So.2d 487 (Fla. 2d DCA 1990).
[6] 668 So.2d 1010 (Fla. 5th DCA 1996).