Dear Mr. Shepard:
You have requested my opinion on substantially the following question:
 Is the City of Maitland Fire Department authorized by section 316.066, Florida Statutes, to receive a copy of a written crash report prepared pursuant to that section in order to request reimbursement from the at-fault driver for a fee assessed by the city?
According to your letter, it is the practice in the City of Maitland for both the police department and the fire department to respond to the scene of an automobile accident if it is unclear whether injuries are involved. City policy authorizes the fire department to seek reimbursement from an at-fault driver's insurance company for costs incurred by the city for responding to an accident and securing the scene. This fee is known as the Motor Vehicle Accident fee. The fire department may seek reimbursement for the fee regardless of whether it actually provides treatment or transportation services. In order to file a timely claim with the at-fault driver's insurance company, the fire department seeks to obtain a copy of the written crash report prepared pursuant to section 316.066, Florida Statutes. However, you have concluded that the fire department does not fall within the scope of the statute authorizing immediate access to written crash reports. You have asked for my opinion on this issue.
Section 316.066, Florida Statutes, requires that a written report be made of certain vehicular accidents. Section 316.066, requires the driver of a vehicle involved in a crash that results in bodily injury or death or damage to property of at least $500 to forward a written report of the crash to the Department of Highway Safety and Motor Vehicles or a traffic records center. However, when the law enforcement officer investigating the crash makes a written report of the crash pursuant to section316.066(3), Florida Statutes, the driver is relieved of his or her obligation to file a written crash report.[1] The Department of Highway Safety and Motor Vehicles is charged with preparing and supplying a form for preparation of crash reports and section 316.068, Florida Statutes, requires that every crash report required to be made in writing must be submitted on one of these forms. Crash reports are analyzed and statistical information based on the contents of the crash reports is used to determine the number and circumstances of traffic crashes.[2]
Prior to its amendment in 2001, section 316.066(3)(c), Florida Statutes, provided only that "[c]rash reports made by law enforcement officers shall not be used for commercial solicitation purposes. . . ." In response to the Second Interim Report of the Fifteenth Statewide Grand Jury on insurance fraud, subsection (3)(c) was rewritten. The grand jury noted a "strong correlation between illegal solicitation and the commission of a variety of frauds."[3] As the grand jury's report noted, "the wholesale availability of these reports is a major contributing factor to this illegal activity and likely the single biggest factor contributing to the high level of illegal solicitation." The Legislature determined that "[m]otor vehicle insurance fraud is fueled by early access to crash reports, which provides the opportunity for the filing of fraudulent insurance claims."[4]
Section 316.066(3)(c), Florida Statutes, currently provides in part that
 "[c]rash reports required by this section which reveal the identity, home or employment telephone number or home or employment address of, or other personal information concerning the parties involved in the crash and which are received or prepared by any agency that regularly receives or prepares information from or concerning the parties to motor vehicle crashes are confidential and exempt from s. 119.07(1) and s. 24(a), Art. I of the State Constitution for a period of 60 days after the date the report is filed. However, such reports may be made immediately available to the parties involved in the crash, their legal representatives, their licensed insurance agents, their insurers or insurers to which they have applied for coverage, persons under contract with such insurers to provide claims or underwriting information, prosecutorial authorities, victim services programs, radio and television stations licensed by the Federal Communications Commission, newspapers qualified to publish legal notices under ss. 50.011 and 50.031, and free newspapers of general circulation, published once a week or more often, available and of interest to the public generally for the dissemination of news."
Despite the general confidentiality of crash reports, certain local, state or federal agencies, victim services programs,[5] and agents or employees that are authorized to have access to crash reports by law must be granted access in order to facilitate the agency's statutory duties.[6] An agency receiving these crash reports must maintain the confidential and exempt status of the reports and may not disclose the contents of any report to any person or entity.[7] A person authorized to receive copies of the crash report must present identification "that demonstrates his or her qualifications to access that information" and file a sworn written statement that the information in the crash report will not be used for any commercial solicitation of accident victims or knowingly disclosed to others for such purposes during the 60-day confidentiality period.[8] Section 316.066, Florida Statutes, makes local law enforcement agencies primarily responsible for preparing and forwarding written crash reports to the Department of Highway Safety and Motor Vehicles. Your letter makes it clear that this is the practice in the City of Maitland.
Exceptions to the Public Records Law are to be narrowly construed and limited to their intended purpose.[9] The "right to access public documents is virtually unfettered, save only the statutory exemptions designed to achieve a balance between an informed public and the ability of the government to maintain secrecy in the public interest."[10]
Section 316.066(3)(c), Florida Statutes, specifically provides that "crash reports required by this section . . . are confidential and exempt from s. 119.07(1) and s. 24(a), Art. I of the State Constitution for a period of 60 days after the date the report is filed." By providing specific exceptions allowing the distribution of these reports to specified individuals and entities,[11] the Legislature has prohibited the distribution of these crash reports to any other entity. A legislative direction as to how a thing shall be done is, in effect, a prohibition against its being done in any other way.[12] This office is without authority to qualify or read into this statute an interpretation or define words in the statute in such a manner as would result in a construction that seems more equitable under circumstances presented by a particular factual situation; such construction when the language of a statute is clear would in effect be an act of legislation, which is exclusively the prerogative of the Legislature.[13]
Therefore, it is my opinion that section 316.066, Florida Statutes, does not authorize the release of written crash reports to the City of Maitland Fire Department for purposes of requesting reimbursement from the at-fault driver in an accident for a fee assessed by the city. This office would suggest that the Legislature may wish to reconsider the provisions of section316.066(3)(c), Florida Statutes, to address concerns such as yours.
Sincerely,
Charlie Crist Attorney General
CC/tgh
[1] See s. 316.066(1) and (3), Fla. Stat.
[2] Section 316.069, Fla. Stat.
[3] See s. 2, Ch. 2001-163, Laws of Florida, providing the statement of public necessity for adoption of the statute.
[4] Id.
[5] Section 316.003(85), Fla. Stat., defines "victim services programs" as:
 "Any community-based organization whose primary purpose is to act as an advocate for the victims and survivors of traffic crashes and for their families. The victims services offered by these programs may include grief and crisis counseling, assistance with preparing victim compensation claims excluding third-party legal action, or connecting persons with other service providers, and providing emergency financial assistance."
[6] Section 316.066(3)(c), Fla. Stat.
[7] Id.
[8] Supra n. 6.
[9] See, e.g., Krischer v. D'Amato, 674 So. 2d 909, 911 (Fla. 4th DCA 1996); Seminole County v. Wood, 512 So. 2d 1000, 1002
(Fla. 5th DCA 1987), rev. den., 520 So. 2d 586 (Fla. 1988).
[10] Times Publishing Company v. City of St. Petersburg,558 So.2d 487, 492 (Fla. 2nd DCA 1990).
[11] Section 316.066(3)(c), Fla. Stat., specifically mentions: the parties involved in the crash, their legal representatives, their licensed insurance agents, their insurers or insurers to which they have applied for coverage, persons under contract with such insurers to provide claims or underwriting information, prosecutorial authorities, victim services programs, radio and television stations licensed by the Federal Communications Commission, newspapers qualified to publish legal notices and free newspapers of general circulation.
[12] See Alsop v. Pierce, 19 So.2d 799, 805-806 (Fla. 1944);Dobbs v. Sea Isle Hotel, 56 So. 2d 341, 342 (Fla. 1952);Thayer v. State, 335 So. 2d 815, 817 (Fla. 1976).
[13] Cf. Chaffee v. Miami Transfer Company, Inc.288 So. 2d 209 (Fla. 1974), Johnson v. Taggart, 92 So. 2d 606 (Fla. 1957);Sarasota Herald-Tribune Co. v. Sarasota County, 632 So. 2d 606
(Fla. 2nd DCA 1993).